OPINION OF THE COURT

Per Curiam.

Petitioner commenced this proceeding to review a determination of the State Commission on Judicial Conduct which concluded that he should be removed from office. He contends that the record does not support a finding of misconduct and that the sanction of removal is unduly severe. After reviewing the evidence before the Commission, we accept its findings and its determined sanction of removal.
Petitioner was elected a Judge of the Rensselaer County Family Court in 1977. In 1982 the Commission on Judicial Conduct filed the present complaint. It contained one charge with 20 counts, alleging that petitioner failed over a three-year period to properly perform his judicial duties and engaged in a course of conduct prejudicial to the administration of justice. Among the counts were charges that: petitioner directed a court clerk to falsify court reports filed with the Office of Court Administration; he failed to properly advise litigants of their rights; he failed to require litigants to submit sworn financial disclosure statements as required by law; he entered dispositional orders in cases in which the court lacked jurisdiction over the respondents; he initiated an improper ex parte communication concerning a pending case; he refused to allow an attorney to appear in his court; and he refused to work for two days because of an alleged shortage of staff.
Following hearings, the referee appointed to hear and report to the Commission found that none of the counts had been sustained. He concluded that although petitioner had “technically” violated sections of the Family Court Act, “the mistakes and improprieties were made either in good *108 faith, or a misapprehension of the legal issue involved, poor judgment, or a lack of judicial experience.” The Administrator of the Commission then moved to disaffirm the referee’s findings of fact and conclusions of law, to adopt those proposed in his memorandum and for a finding of misconduct. By order dated October, 1983, the Commission found petitioner guilty of 9 of the 20 counts alleged in the complaint. In a separate determination dated April 9, 1984, a majority of the Commission concluded that petitioner’s misconduct warranted his removal from office.
Petitioner was charged with deliberately falsifying reports to the Office of Court Administration by directing a deputy clerk to cross off the list 60 cases which were pending after the deadline for disposition (see 22 NYCRR 4.1, 2502.1).
The evidence established that shortly after petitioner took office he was given a copy of the standards and goals of the Office of Court Administration (OCA) and advised of the necessity to keep records of pending cases and file reports concerning them. In October, 1978 Ms. Beeler, the deputy clerk of Family Court, advised petitioner that 25 to 40 cases were going over OCA deadlines. She explained the OCA requirements to him and the necessity for following them. Petitioner answered her with obscenities and said, in effect, that OCA was not going to tell him how to run his court. He told Ms. Beeler that he, not OCA, employed her. In January, 1979 she again advised petitioner of the deadline and that 60 cases which were over the deadline would have to be reported as pending. Petitioner again became angry and told her he would run the court as he saw fit. He instructed her to cross off the 60 oldest cases as if they had been disposed of, when in fact they had not, and to submit the list to OCA without them. At the hearing Ms. Beeler testified to those facts and admitted that she had falsified the report on petitioner’s directions.
Petitioner did not submit any evidence contradicting this testimony. When questioned about the falsification of court records at the hearing and asked if he ordered it, petitioner neither admitted nor denied the charge but responded, “I can’t recall why I would do such a thing.” The *109 referee did not make a specific finding on the charge, stating only that it was “disputed”.
Petitioner now contends that the falsification charge is unsubstantiated and stems from personal conflicts with Ms. Beeler. Despite his contentions, Ms. Beeler’s testimony is credible and corroborated in part by the testimony of the chief clerk of the court who testified that he reminded petitioner of the OCA guidelines when he noticed that a case had passed a deadline, to which petitioner angrily responded that OCA was not going to tell him how to run his court. Having examined the relevant testimony on this point, we conclude that the Commission’s finding of deliberate falsification was correct (see, generally, Matter of Spector v State Comm. on Judicial Conduct, 47 NY2d 462, 465-466).
The Commission also charged that in several instances petitioner failed to advise parties of their rights. Specifically, the record shows that petitioner failed (in 34 cases) to advise litigants either of their right to counsel and to a hearing (Family Ct Act, § 433) or of their right to the assistance of counsel, to confer with counsel before proceeding and to have counsel assigned if they could not afford to retain counsel (Family Ct Act, § 262, subd [a]). In two paternity cases he failed to advise the respondents of their right to remain silent and to have a blood-grouping test (Family Ct Act, §§531, 532). Petitioner contends that the failure to advise, in most cases, involves matters that were settled. The “settlements”, however, came after legal proceedings had started and the right to counsel attached. The transcripts demonstrate that these dispositions took place after the court questioned the parties and obtained admissions from them. The only reasonable conclusion to be drawn in many of the cases is that the “settlements” were imposed on the parties by the court.
Petitioner contends that the failure to notify clients of their rights and purported violations of statutory procedure are “mistakes and errors of law” which can be corrected on appeal and which fall short of judicial misconduct. A repeated pattern of failing to advise litigants of their constitutional and statutory rights, however, is serious misconduct (Matter of Sardino v State Comm. on Judi *110 cial Conduct, 58 NY2d 286; see, also, Matter of McGee v State Comm. on Judicial Conduct, 59 NY2d 870).
In Matter of Sardino, a City Court Judge was removed from office because of a pattern of misconduct, which included a repeated failure to inform the accused of the right to counsel or to make minimal inquiry as to whether they wished assigned counsel. Petitioner urges that Matter of Sardino is distinguishable in that, unlike Judge Sardino, he was not personally abusive to litigants or attorneys nor did he knowingly deprive defendants of their rights. The fact that petitioner did not use profanity in the courtroom or abuse litigants does not mitigate the serious damage caused by his vital omissions in cases involving child custody and support and determinations of paternity. Moreover, it is apparent from the record of other proceedings that petitioner knew how to properly advise litigants of their rights. His lapses may be the result of carelessness or laziness, but in any event indicate a serious disregard of the Judge’s proper role.
In addition to the deliberate falsification of public records and the failure to advise clients of their rights, the Commission also found that petitioner often disregarded important statutory procedures. Petitioner failed to require sworn financial disclosure statements from litigants in 28 cases and in seven cases he entered dispositional orders when the court lacked jurisdiction over the respondents. Even child custody cases were resolved against parents when the court lacked jurisdiction over them. In five cases involving petitions for orders of protection, petitioner entered default judgments based upon mail service in violation of the requirement of section 826 of the Family Court Act. After being informed that this practice violated statutory procedure, petitioner insisted at his hearing that provisions of the CPLR authorized mail service though none do. Finally, he disregarded a prior order and entered an order of filiation in the absence of the parties, a particularly egregious order since the mother was married to a man other than the putative father. Although these were errors of law, they cannot be excused on that basis. The errors were fundamental and the pattern of repeating them, coupled with an unwillingness to recognize their *111 impropriety, indicate that petitioner poses a threat to the proper administration of justice (see Matter of Aldrich v State Comm. on Judicial Conduct, 58 NY2d 279; Matter of Shilling, 51 NY2d 397).
We also accept the Commission’s findings that petitioner engaged in an improper ex parte communication, refused to work on two days, refused to permit an attorney to appear before him and failed to conduct a hearing in a nonsupport case after entering a temporary order, although requested by counsel to do so several times.
In reviewing the sanction imposed, we must recognize that the purpose of judicial disciplinary proceedings is “not punishment but the imposition of sanctions where necessary to safeguard the Bench from unfit incumbents” (Matter of Waltemade, 37 NY2d [a], [lll]). Petitioner argues that the sanction of removal is excessive because his improper conduct was due to inexperience, court congestion, and a long-standing personal feud with the court staff and the other Family Court Judge in his county. While these factors may have adversely affected petitioner’s judicial performance they do not excuse his direction to deliberately falsify court records or his disregard of statutory procedures and of the rights of litigants appearing before him (see Matter of Sardino, supra; Matter of McGee, supra). Petitioner’s conduct is inconsistent with the fair and proper administration of justice and renders him unfit to remain in office.
Accordingly, the determined sanction of removal should be accepted, without costs.