IN RE COMPLAINT AGAINST JAMES A. KELLY, COUNTY JUDGE IN AND FOR THE 11TH JUDICIAL DISTRICT OF THE STATE OF NEBRASKA.
STATE OF NEBRASKA EX REL. COMMISSION ON JUDICIAL QUALIFICATIONS, RELATOR, V. JAMES A. KELLY, RESPONDENT.
407 N.W.2d 182

Filed June 12, 1987.    No. JQ86-003.

Robert M. Spire, Attorney General, and Mel Kammerlohr, for relator.

John A. Wagoner of Wagoner Law Offices, for respondent.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

On April 10, 1986, an amended complaint was filed by the Nebraska Commission on Judicial Qualifications alleging, in three counts, misconduct of James A. Kelly, a county judge of the 11th Judicial District. Pursuant to Neb. Const. art. V, § 30, and Neb. Rev. Stat. § 24-721 (Reissue 1985), this court entered an order, at the request of the commission, appointing a special master to conduct a formal hearing concerning the allegations. The hearing was held on July 10, 1986. With respect to count I the master found that clear and convincing evidence existed showing that Judge Kelly's actions violated Canon 2 of the Code of Judicial Conduct and Neb. Rev. Stat. § 24-722(2) and (6) (Reissue 1985). He further found that the acts of Judge Kelly described in count II were proved and that the judge's conduct, while violating Canon 7A(3) and (4) of the Code of Judicial Conduct, did not fall within the prohibitions set out in § 24-722. Concerning count III, the master found the allegations to be unsupported by the evidence.

The findings and recommendations of the commission similarly determined the allegations in count III to be

unfounded and recommended that the count be dismissed. The commission's report further stated

> [A]fter full discussion it was by unanimous vote of the members of the Commission present and participating decided that . . . clear and convincing evidence [proved] that Judge Kelly's conduct as set out in Counts I and II was prejudicial to the administration of justice and that his actions brought his judicial office into disrepute in violation of Neb. Rev. Stat. § 24-722.

This language corresponds to a finding of a violation of subsection (6) of § 24-722, which is what the special master found for count I. However, later in the commission's report much broader findings of violations were listed. Specifically, it found that Judge Kelly violated Canons 1, 2, 3A(1) and (5), 3B(1), and 3C(1) of the Code of Judicial Conduct, and § 24-722(1), (2), and (6), with respect to count I, and further violated Canon 7 of the Code of Judicial Conduct and § 24-722(1) and (6), with respect to count II.

The statute on which these charges are based, § 24-722, reads in relevant part:

> A Justice or Judge of the Supreme Court or judge of any court of this state may be reprimanded, disciplined, censured, suspended without pay for a definite period of time not to exceed six months, or removed from office for (1) willful misconduct in office, (2) willful disregard of or failure to perform his or her duties . . . or (6) conduct prejudicial to the administration of justice that brings the judicial office into disrepute . . . .

We received no additional evidence; hence, our scope of review is de novo on the record. Neb. Const. art. V, § 30(2); Neb. Rev. Stat. § 24-723 (Reissue 1985); *In re Complaint Against Kneifl*, 217 Neb. 472, 351 N.W.2d 693 (1984). We must "determine upon our own independent inquiry, as to the charges of alleged misconduct referred to us, whether the evidence clearly and convincingly proves that respondent acted in such a manner" as to have violated § 24-722(1), (2), or (6). *In re Complaint Against Kneifl, supra* at 477, 351 N.W.2d at 696-97.

Our tasks are first to decide if the evidence supports the

allegations set out in counts I and II; second, if proved, what canons and subsections of § 24-722 may have been violated as a result of the acts complained of in the two counts; and third, what type of discipline, if any, is appropriate under the circumstances.

## COUNT I

Count I of the amended complaint charged that

the said James A. Kelly, between February 24, 1984, and May 9, 1985, prevented the normal processing of an original traffic citation against his son, Timothy C. Kelly, filed in the court in which said James A. Kelly is a judge. The result was that no waiver, plea, or other appearance was made by Timothy C. Kelly in that court for over a year after the original citation was issued by Nebraska State Trooper, W.J. Mach, on or about February 24, 1984. No warrant for said Timothy C. Kelly's arrest was issued by said court during this period, as is usually done when no appearance is made by an alleged traffic violator. A conviction on this traffic violation charge would have resulted in revocation of Timothy C. Kelly's driver's license for an accumulation of 12 points in a 2 year period from July 15, 1982, to July 15, 1984.

The facts are not in dispute. Judge Kelly's son, Timothy Kelly, received a citation for speeding, with an appearance date of March 8, 1984. One copy of the citation was filed in the "appearance date" file and another in the "abstract of judgment" file in the clerk's office of the Hall County Court. Shortly thereafter, Timothy visited his father at the courthouse and discussed the ticket with him. Judge Kelly advised him to plead guilty and pay the ticket. The judge secured the copy of the citation in the appearance date file, prepared a plea and waiver of appearance for his son to sign, and told his son to sign it and take it to the clerk and pay the fine. Timothy had no funds at the time. The judge refused to lend money to him and told him to get some money and come back.

The fine was not paid until the spring of 1985, when the ticket was found between phone books in a desk drawer. When the ticket was found, Timothy promptly appeared and paid the fine. His driver's license was revoked for an accumulation of 12

points in a 2-year period.

Timothy's speeding case was not called up for a hearing for over a year because the physical presence of the citation is necessary to trigger the process. At all times a copy of the citation remained in the abstract of judgment file. This was never removed by Judge Kelly, and it was here that a court employee noticed the ticket and reported that its duplicate was missing from the appearance date file in April of 1985. An inquiry was started into the matter. In early May of 1985 an investigator for the Commission on Judicial Qualifications, Samuel Van Pelt, interviewed Judge Kelly about the missing citation. The judge replied that he did not know anything but that he would look into it. The next day Judge Kelly notified the investigator that he had found the ticket and that he had forgotten about it. At the hearing the judge stated he had not hidden it and that he could not recall ever seeing it prior to the time he found it. As stated in the commission's report, "No material or relevant evidence was offered to explain why the file was not discovered by Judge Kelly for more than 14 months or why the file was not returned to its proper place."

We find that the evidence clearly and convincingly proves the allegations of count I, that Judge Kelly did prevent the normal processing of a traffic citation against his son. We now will determine what canons and what subsections of § 24-722 have been violated.

In the opinion of the commission, Judge Kelly violated subsections (1) and (2) of § 24-722, which prohibit willful misconduct in office and the willful disregard of or failure to perform his or her duties. The special master found the acts to be negligent.

This is our first opportunity to construe the meaning of "willful misconduct in office." The Arizona and California Supreme Courts describe willful misconduct as

"unjudicial conduct which a judge acting in his judicial capacity commits in bad faith, while the [charge of conduct prejudicial to the administration of justice] should be applied to conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but

conduct prejudicial to public esteem for the judicial office. . . ."

*Matter of Haddad*, 128 Ariz. 490, 497-98, 627 P.2d 221, 228-29 (1981) (quoting *Geiler v. Commission on Judicial Qualifications*, 10 Cal. 3d 270, 515 P.2d 1, 110 Cal. Rptr. 201 (1973)). The North Carolina and Mississippi Supreme Courts define the charge as follows: " '*Willful misconduct in office* is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. . . .' " *In re Inquiry Concerning Garner*, 466 So. 2d 884, 885 (Miss. 1985) (quoting *In re Nowell*, 293 N.C. 235, 237 S.E.2d 246 (1977)).

Crucial to a finding that the respondent violated subsection (1) is a showing of bad faith. As stated in *Gubler v. Commission on Judicial Performance*, 37 Cal. 3d 27, 45-46, 688 P.2d 551, 562, 207 Cal. Rptr. 171, 182 (1984):

Bad faith is the touchstone for testing whether misconduct committed by a judge while acting in a judicial capacity constitutes wilful misconduct. [Citation omitted.] " '[B]ad faith' is quintessentially a concept of specific intent, requiring consciousness of purpose as an antecedent to a judge's acting maliciously or corruptly." [Citation omitted.] When the judge has " 'intentionally committed acts which he knew or should have known were beyond his lawful power,' [citation], . . . 'bad faith' entails actual malice as the motivation for a judge's acting ultra vires. The requisite intent must exceed mere violation; negligence alone, if not so gross as to call its genuineness into question, falls short of 'bad faith.' " [Citation omitted.] Even when the acts in question were within the judge's lawful power, they may involve bad faith, and thus constitute wilful misconduct, if "committed for a corrupt purpose, i.e., for any purpose other than the faithful discharge of judicial duties."

For cases clearly involving bad faith, see, *Matter of Coruzzi*, 95 N.J. 557, 472 A.2d 546 (1984), *appeal dismissed* 469 U.S. 802, 105 S. Ct. 56, 83 L. Ed. 2d 8 (bribe); *In re Hunt*, 308 N.C. 328, 302 S.E.2d 235 (1983) (bribe); *In re Jordan*, 290 Or. 303, 622

P.2d 297 (1981) (false testimony under oath); *Matter of Davila*, 631 S.W.2d 723 (Tex. 1982) (gave paid appointment to relative, willfully and persistently violated several statutes); *In re Anderson*, 412 So. 2d 743 (Miss. 1982) (inflated fines for traffic violators, officially reported having received a lesser amount, and converted the difference for his personal gain).

We find clear and convincing evidence of bad faith or willful misconduct in the present case. Judge Richard Weaver found the missing ticket a few days before Samuel Van Pelt approached Judge Kelly about the matter. Weaver testified that he was looking for a book in Kelly's desk when he lifted a current phone book and saw the ticket. He could tell at a glance that it was Timothy Kelly's traffic citation. As the ticket was missing for 1 1/4 years, the fact that it was under a current phone book tends to establish an inference that Kelly used the drawer within the last year. However, the evidence also establishes that Judge Kelly was under severe emotional and financial strain during this period. In July of 1983 Judge Kelly surrendered his son to the police after Timothy related the facts of his involvement in a felony. In November of 1983 Timothy was convicted of one count of burglary. That same month, due to business reverses, the judge lost his home while proceeding through bankruptcy. On December 12, 1983, Timothy was sentenced to probation for the felony conviction. On January 25, 1984, the judge's wife became ill, and died on January 26. The incident with the traffic citation occurred in February 1984. Shortly thereafter, his son moved away from home.

Exhibit 12 consists of reports, letters, and documents accumulated by Samuel Van Pelt as part of his investigation for the Commission on Judicial Qualifications. Counsel for Judge Kelly moved for the admission of exhibit 12 and entered no hearsay objection concerning the matters discussed in it. The exhibit contains notes from meetings Van Pelt had with various courthouse employees. One overheard Judge Kelly threaten to find in contempt the person who notified the commission. Van Pelt also met with Timothy's probation officer and the judge who sentenced Timothy to probation and later granted him an early release from probation. The notes reflect that both the judge and the probation officer told Van Pelt about ex parte

contacts of the sentencing judge by Judge Kelly on his son's behalf. Both believed that Judge Kelly misrepresented his son's compliance with the terms of probation.

Had Timothy been timely prosecuted for the traffic violation, a conviction would have resulted in having Timothy's driver's license revoked and also would have constituted a violation of probation. We believe that Judge Kelly was aware of these consequences.

Although the ex parte communications with his son's sentencing judge are not part of the complaint, they do tend to show that Judge Kelly would, and did, intervene on his son's behalf through improper and inappropriate avenues to secure an early release from probation for his son. The ticket would have jeopardized his son's probationary status. The fact that the ticket was under a current phone book and the fact that Judge Kelly should not have called for the ticket in the first place, when looked at with the other evidence of improper acts on behalf of his son, convince us that the prosecution of the ticket was delayed in bad faith. We find a violation of § 24-722(1), which prohibits willful misconduct in office.

With respect to the commission's opinion that the acts alleged in count I constitute a violation of § 24-722(2), willful disregard of or failure to perform his or her duties, we find that this view is supported by clear and convincing evidence. All error is not punishable. As stated in *Matter of Carstensen*, 316 N.W.2d 889, 893 (Iowa 1982), "A certain amount of 'honest' error . . . may be expected. However, when the violations are blatant, flagrant, and repeated, they should not and will not be condoned." Since we have found the violation to be willful and to involve a case in Judge Kelly's court, the failure to return the file is a blatant, flagrant breach of his judicial duties. We find a violation of § 24-722(2).

Both the special master and the commission found a violation of § 24-722(6), which prohibits "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." We find that the evidence clearly and convincingly proved that Judge Kelly violated this subsection.

In *In re Complaint Against Kneifl*, 217 Neb. 472, 475, 351 N.W.2d 693, 695-96 (1984), we stated:

Conduct which falls short of reaffirming one's fitness for the high responsibilities of judicial office constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute. . . . It includes conduct which would justify a reasonable man in believing that a result achieved by a judge was achieved because of his position and prestige . . . and conduct which would appear to an objective observer to be not only unjudicial but prejudicial to public esteem for the judicial office . . . . It depends not so much on the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers.

Judge Kelly contends the object of the conversation with his son was to expedite his plea of guilty by drawing up a waiver of appearance. However, the motives of the judge are not the main concern when deciding whether a violation of subsection (6) has occurred; the integrity of the judicial office is at issue. The acts of the judge caused a delay of the prosecution of his son and could not have been achieved absent the judge's position. That Judge Kelly's acts constitute a violation of the plain language of this subsection is obvious.

However, we have an additional guide to measure whether the conduct complained of violates subsection (6). In our view the Code of Judicial Conduct works in tandem with § 24-722. The code provides the standards against which judicial conduct is measured and the statute provides for discipline for different breaches of the standards. As discussed above, the statute differentiates between willful and negligent offenses and offenses related or unrelated to the performance of official duties. The code, on the other hand, has no provisions for discipline and, like subsection (6), is unconcerned with motive or culpability. It sets out what conduct is expected and counsels against conduct that is inappropriate.

Today, we adopt the conclusions of the Supreme Court of Minnesota that the purpose of the code is, as expressed in Canon 1, to set "high standards of conduct so that the integrity and independence of the judiciary may be preserved" and the focus of the code is on what conduct may be prejudicial to the

administration of justice. *Complaint Concerning Winton*, 350 N.W.2d 337 (Minn. 1984). (We note that Minnesota has Rule 4(a)(5), Rules of Board on Judicial Standards, which provides for discipline for a violation of the code.) Since the code's object is to set out clearly what conduct should be avoided for its prejudicial potential, and since the code has been adopted by this court, we find that a clear violation of the code constitutes, at minimum, a violation of § 24-722(6). See, also, Neb. Const. art. V, § 1, which grants the Supreme Court the power to establish rules, and confers general administrative authority.

We find that the acts complained of in count I were in violation of Canons 2 and 3. Canon 2 provides that "[a] Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities." Part B of Canon 2 states that "[a] judge should not allow family, social, or other relationships to influence his or her judicial conduct or judgment." The judge's involvement in a traffic matter concerning his son, however innocent it may have been, clearly violated Canon 2, part B, and brought the judicial office into disrepute. Canon 3 requires that "[a] Judge Should Perform the Duties of the Office Impartially and Diligently." Part A(5) provides that "[a] judge should dispose promptly of the business of the court." Part B(1) is similar to part A(5), in that it requires diligent discharge of administrative responsibilities. The delay that resulted in the prosecution of the traffic violation clearly runs counter to the requirements of Canon 3, parts A(5) and B(1), and was prejudicial to the administration of justice. For all of the above-stated reasons, we find that Judge Kelly violated § 24-722(6).

We now address the issue of what discipline is proper under the circumstances. The commission recommended that Judge Kelly be removed from office on this count. We feel that the violation of § 24-722(1), (2), and (6) in this case justifies the imposition of the sanction of removal.

The object of judicial discipline is not vengeance or retribution, but to preserve the integrity of and the public confidence in the judiciary. *In re Complaint Against Kneifl*, 217 Neb. 472, 351 N.W.2d 693 (1984). Sanctions should be imposed where necessary to safeguard the bench from those who are unfit. *Matter of Reeves*, 63 N.Y.2d 105, 469 N.E.2d 1321, 480

N.Y.S.2d 463 (1984). "The discipline we impose must be designed to announce publicly our recognition that there has been misconduct; it must be sufficient to deter respondent from again engaging in such conduct; and it must discourage others from engaging in similar conduct in the future." *In re Complaint Against Kneifl, supra* at 485, 351 N.W.2d at 700.

The removal of his son's citation from the appearance date file is the kind of act which, out of dedication to the principle that ours is a state governed by laws and not individuals, cannot be condoned. This act was clearly improper and is a serious blow to the public's confidence in the impartiality of the bench.

We must weigh the nature of the offense, which we feel is serious, with the purpose of sanctions in these cases. We feel that the nature of the interventions of Judge Kelly on his son's behalf shows a lack of fairness and impartiality and demonstrates that Judge Kelly is unfit to hold office. We order that he is to be removed from office.

## COUNT II

Count II of the amended complaint charges as follows:

> James A. Kelly was elected to the Hall County, Nebraska Airport Authority Board, a publicly elected position in November, 1980, and took office on said board in January, 1981; said Kelly was appointed County Judge in 1981 and has continued to hold his Airport Authority Board position continuously since becoming a County Judge and continues to be a member of said Airport Authority Board, contrary to §24-722 (6) (R.S. Supp 1984) and Canon 7 of the Code of Judicial Ethics.

As determined at the hearing before the special master, Judge Kelly took office on the airport authority board January 1, 1981. On February 1, 1981, he was appointed a judge and, as evidenced by the record, consulted with counsel and fellow judges about whether his elected position would violate Canon 7. Canon 7A(4) provides, "A judge should not engage in other political activity except on behalf of measures to improve the law, the legal system, or the administration of justice." It is clear, and we therefore find, that Judge Kelly's retention of his position on the board runs counter to the intent of Canon 7. Judge Kelly entered no objection to the above findings of fact

or to the finding of the Canon 7 violation.

The special master found a violation of the canon, but no statutory violation. The commission found Judge Kelly committed a subsection (1) violation, willful misconduct, and a subsection (6) violation, conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

Consistent with our holdings in the disposition of count I, we conclude that the violation of Canon 7 also constitutes a violation of § 24-722(6) and find no subsection (1) violation because there is no allegation or showing of bad faith on this count.

We strongly believe that Canon 7 is in the best interests of the public and the judicial system. In fact, the record demonstrates that Judge Kelly was put in the position of giving legal advice concerning some contracts before the board at one of the meetings. While this is not a count in the Commission on Judicial Qualifications' amended complaint, it does reflect on the wisdom of Canon 7's prohibition against involvement of judges in political activities.

In determining the proper sanctions to be imposed, we take into account that it is not in dispute that Judge Kelly relied in good faith on the advice he received, *Matter of Amended Canon 7 of Code of Judicial Conduct: Lyons*, 101 N.M. 220, 680 P.2d 601 (1984), and that there is no showing that his political activities had impinged on his judicial duties. After the charges were filed he resigned his position on the board. The commission recommended, and we hereby endorse, censure on this count.

The court agrees with the recommendation of the commission and orders that Judge Kelly shall be, and hereby is, censured, and is further removed from the office of county judge.

JUDGMENT OF DISCIPLINARY SANCTIONS.

KRIVOSHA, C.J., not participating.

WHITE, J., dissenting in part.

The master found that the activities of Judge Kelly were negligent and not willful. I would therefore limit the sanction to a suspension for a period of 6 months and an order of censure.