Simons, J.
(dissenting). The issue is whether the failure of a Judge to dispose of the business of the court promptly may *300 constitute misconduct and, if it may, whether petitioner’s delays were serious enough to warrant his censure. The majority concedes that delay can constitute misconduct and that the Commission generally has jurisdiction of such cases. That is a hollow victory for the Commission, however, because the majority goes on to hold that it was without power to discipline petitioner in this case. The delays here, it holds, involved no more than a problem in the day-to-day operation of the courts. Concededly, some delays, because of their nature and duration, are purely administrative concerns and drawing the line between them and those serious enough to constitute misconduct may be difficult. But this case hardly involves drawing lines. Petitioner’s inexcusable failure to dispose of court business in eight cases for periods as long as nine years must, under any rational interpretation of our rules, constitute misconduct. Accordingly, I dissent.
I
Respondent, the State Commission on Judicial Conduct, has been authorized by the Constitution and Judiciary Law to "receive, initiate, investigate and hear complaints” concerning the performance of Judges or Justices in the Unified Court System and to sanction them for cause (NY Const, art VI, § 22; Judiciary Law § 44 [2]). Cause may be provided by a violation of the Rules of the Chief Administrator of the Courts which state that the judicial duties of a Judge take precedence over all others and that among those duties is the obligation to dispose promptly of the business of the court (22 NYCRR 100.3, 100.3 [a] [5]). Significantly rule 100.3 (a) (5) is cast in terms of prompt disposition of the court’s business, rather than proscribing inordinate delay. These rules were adopted with the approval of this court (Judiciary Law § 212 [2] [b]) and are consistent with provisions found in the Code of Judicial Conduct, approved by the American Bar Association, and similar standards applied in every jurisdiction in this Nation (see, Code of Judicial Conduct, Preamble; Canon 3A [5]). They are necessary predicates to years of institutional efforts to avoid judicial delay and the court congestion which results from it.
Petitioner refers to no standards, established by decision or otherwise, specifying what is excusable delay and what is not. Significantly, however, both the Legislature and the Chief Judge have spoken on the general subject. The Legislature has *301 directed that motions relating to a provisional remedy shall be decided within 20 days and all others within 60 days (CPLR 2219 [a]), and the Chief Judge has enacted rules which require that every Judge shall notify the Chief Administrator of all matters pending before him or her and undecided more than 60 days (or in some cases less) after final submission by the parties (22 NYCRR 4.1). Manifestly, delay is a subjective concept and not every failure to decide a matter within these time limits is misconduct, but the provisions do establish a frame of reference when considering what may warrant discipline.
Although these guides do not establish a bright line separating an excusable violation of the rules and misconduct, none is needed in this case. If the requirement that a Judge shall promptly dispose of the business of the court has any meaning, it bans delays involving a number of cases over an extended period of years and respondent’s determination that petitioner was chargeable with misconduct for violating it is inescapable.
II
It will be helpful to add some facts from the record to those set forth in the majority opinion.
The nine matters investigated by the Commission involved actions and proceedings before petitioner between 1979 and 1987. Respondent found he delayed in eight of the nine cases specified in the charge. The longest delay, occurring in two of the counts, was nine years, three months (Starkaiser and Public Administrator) but in those two cases petitioner also had failed to timely dispose of five applications for interlocutory relief for periods ranging in length from four to eight years. The other seven counts involved delays of seven months to more than eight years.
Petitioner acknowledges that although he lost track of two or three cases, he knew that most of the matters were undecided for extended periods of time. Indeed, he could not avoid knowing of the delays. There was evidence that attorneys called or wrote the Judge’s Chambers repeatedly, speaking with the Judge personally or with his staff, to urge that a decision be rendered. In one matter, the evidence established that counsel made over 24 calls to request a decision. Moreover, on six occasions article 78 proceedings were instituted to compel a decision or to have the matter transferred to another *302 Judge for a decision on the record.[1] One of the early article 78 proceedings involved Silk & Bunks v Danzig, an action for accounting and to impress a trust on property allegedly wrongfully taken. The court directed the return of part of the property and when defendant failed to comply, plaintiff moved for a contempt order. The matter was fully submitted in January 1983 and notwithstanding counsel’s repeated requests thereafter for a decision, none was forthcoming. Finally, plaintiff instituted mandamus proceedings in the Appellate Division. At oral argument, the Assistant Attorney-General representing petitioner offered as excuse petitioner’s belief that a settlement of the matter was being negotiated and promised a decision by June 12, 1984. Petitioner did not decide the motion, however, and the court summarily granted plaintiff an order of mandamus on June 14, 1984. The parties subsequently settled the case without receiving a decision on the unresolved motion.
Notwithstanding this unfortunate incident, petitioner was a respondent in four subsequent article 78 proceedings instituted by litigants unable to obtain decisions on pending matters. In one case, Corporation of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v Solow Bldg. Corp., plaintiff’s counsel made several attempts to obtain a decision and was repeatedly assured that one was forthcoming. When he received none, he instituted an article 78 proceeding seeking to have the matter transferred to another Judge for the purpose of rendering a decision on the record. Counsel was subsequently persuaded to withdraw the proceeding by petitioner’s sworn affidavit stating that he would render a decision promptly. Nine months passed without him doing so, however, and plaintiff commenced another proceeding. By the time it came before the Appellate Division, the issue had become moot because after the second article 78 proceeding was instituted, and almost eight years after the matter was submitted to him, petitioner decided the case. Nevertheless, the Appellate Division took the unusual step of going beyond a perfunctory dismissal of the petition for mootness, criticizing petitioner and declaring his delay inexcusable (see, Matter of Corporation of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v Greenfield, 131 AD2d 355, 356).
Moreover, the Church case was not the only matter in *303 which the Appellate Division publicly criticized petitioner for inordinate delay (supra). In Schwartz v Tessler (131 AD2d 335) the court reversed an order denying a motion for a new trial, noting as it did so that there was no reason for the delay of more than two years and five months between submission and decision (id., 337). In DeCandia v Hudson Waterways (130 AD2d 352, 353), the court affirmed, without opinion, but added that it could perceive no reason for petitioner’s "inordinate” delay (3 years and 10 months) in deciding the motion to dismiss the third-party complaint (id., at 353).
Thus, when the majority asserts that when petitioner’s "oversight was brought to his attention” he resolved the pending matters (majority opn, at 296), it should be remembered that the "oversight[s]” were "brought to his attention” many times, over many years, by complaining litigants, article 78 proceedings, repeated administrative cajoling and Appellate Division criticism and that the matters were not fully resolved until petitioner was relieved of part of his calendar.
m
Petitioner admits that the delays were inexcusable but he denies that he has been guilty of any misconduct. He maintains generally that censure is not warranted because he has already been "sanctioned” enough by the statements contained in the Appellate Division’s decisions and the continued complaints of the local and State-wide administrators calling him to task.
Petitioner’s principal legal contention is that the Commission was without jurisdiction in these matters and that its actions constituted an "unwarranted intrusion” into the courts because the time taken to dispose of cases is a matter of individual judicial discretion. In his view, the only remedies for judicial delay are administrative supervision or article 78 proceedings.[2] At most he would admit that the Commission may review a Judge’s conduct for "persistent failure to per *304 form duties”, presumably under a standard that measures the number of delays against the number of cases handled over a career. Petitioner, claiming to have handled 25,000 cases since taking office, maintains the delays in this case do not rise to the level of a persistent failure to perform duties. It is doubtful that under petitioner’s standard any Judge’s delays, no matter how numerous or how egregious, could constitute misconduct. But more to the point, the Commission was investigating nine cases, not 25,000.
As for his suggested solution for the problem, obviously the administrative efforts did not remedy the delays here, and even though article 78 proceedings did produce some decisions they are not an acceptable alternative for addressing misconduct. Litigants go to court to solve their problems, not multiply them. It can be little comfort to them, therefore, to learn that having reluctantly entered the courtroom they have acquired a new adversary, the assigned Judge, who must be sued in one or more legal proceedings before they obtain a decision in their case.
Although the majority rejects petitioner’s contention that the Commission lacks jurisdiction in cases involving delay and it finds petitioner guilty of "lengthy” and "inexcusable” delay (majority opn, at 297), it adds a gloss to our rule which substantially changes its meaning. The majority finds no misconduct because (1) the delay was not accompanied by aggravating factors and (2) the petitioner acted with good intentions.[3] Thus, it injects considerations appropriate to mitigation once misconduct has been found but which are not relevant to the determination of misconduct. Its failure to distinguish between the two inquiries not only recasts the plain language of a rule we have approved but it incorrectly links misconduct to irrelevant considerations of judicial administration.
First, the majority construes the rule to require delay plus some additional violation before misconduct is established, and asserts that the plus is not present in this case. The rule is not violated, it holds, unless there is delay coupled with other derelictions (see, majority opn, at 298, citing Matter of Lenney, 71 NY2d 456; and Matter of Reeves, 63 NY2d 105; Matter of Leff, Aug. 12, 1982, reported in Ann Report of State *305 Commn on Judicial Conduct, Mar. 1983, at 119). The rule contains no such qualifying conditions and nothing should be added to it. To require delay plus some other misconduct, such as falsification of records or insubordination, is to proscribe the other conduct, not to proscribe delay.
Second, the majority holds that if petitioner acted in good faith a finding of misconduct is unwarranted under the rules. It cites in support of this principle only a New Jersey case (Matter of Alvino, 100 NJ 92, 494 A2d 1014, 1016) which involved inadvertent delays of undisclosed length in "some” matters (see, majority opn, at 297). In New York, however, good intentions do not change prohibited conduct to permitted conduct. On the contrary, our cases have consistently adopted the view that misconduct remains misconduct, even though the offending Judge acts in good faith. This is so because the violation results from the unexcused failure to meet judicial standards, not from the Judge’s motives, and because the damage to the litigants individually and the court system as a whole is the same whether the delay is intentional or not. The appearance of impropriety cases offer an appropriate parallel (see, e.g., Matter of Edwards, 67 NY2d 153, 155 [interceding with another Judge concerning pending charges against son]; Matter of Lonschein, 50 NY2d 569, 572-573 [interceding with city licensing officials on behalf of friend]; see also, Matter of Harris, 72 NY2d 335, 336-337 [conducting charity fund drive in the courtroom]). Motive may be relevant in determining the appropriate discipline imposed but it is not relevant when evaluating the seriousness of delay to determine misconduct.
At bottom, the majority’s analysis is unsound not only because it recasts the plain language of our rule but because it links delay with the Judge’s response to administrative action. Under the majority’s theory, if the administrators failed to perform their duties in overseeing the prompt disposition of the court’s business, individual Judges could not be guilty of misconduct. No matter how egregious the Judges’ delay they could not be guilty of insubordination, contumacious conduct, or the like, in resisting the administrators. Administrative action is simply irrelevant when measuring delay or misconduct resulting from delay. Delay is delay and petitioner’s conduct is neither more nor less censurable because of administrative shortcomings, if such there were. But notwithstanding the majority’s analysis, the administrators did act here and petitioner’s knowing delay and his failure to take any steps to correct his delays under the extreme condi *306 tions presented was certainly "willful” and satisfies the majority’s test.
There is a more fundamental reason why petitioner should be censured. Petitioner admittedly knew the rules and he had to know under the circumstances that he had grossly violated them by failing to decide several matters. He was personally responsible for observing the rules regulating his conduct and, having failed to do so, he should be answerable for his failures regardless of any administrative lapse.
Finally, the majority, again confusing administration with misconduct, suggests that the Commission’s action in this case constituted an unwarranted interference with the administration of the courts.[4] However, nothing the Commission did usurped responsibilities of independent judicial officers or court administrators, intruded into the operation of the court system, or interfered with the disposition of the courts’ calendars. The responsibility for those matters remained with the courts and their officers and the Commission proceeded to address solely petitioner’s misconduct. Given the forthright language of our rules and the egregious delays in this case, the Commission had every reason to conclude that petitioner had been guilty of serious misconduct and that it was obliged by the Constitution and the statute to pursue the charge against him. The majority’s holding that it was wrong in doing so ousts the Commission from its constitutional jurisdiction in this area.
IV
Our rules proscribing delay embody the simple truth that the courts, like all public institutions, exist for the benefit of those they serve. If there is one thing that parties appearing in court are entitled to ask of the judicial system, it is that matters submitted to the court be decided. If they are not, the *307 litigants are helpless. They cannot fire the Judge or obtain a substitute. Even a bad decision is better than none at all because at least it can be corrected on appeal. Indeed, in the cases before us, the matters, if only they had been decided, could have completed the full appellate process several times over in less time than it took petitioner to act.[5]
Certainly the problems of busy Trial Judges struggling to cope with increasing work loads cannot be minimized. Many Judges fall behind at one time or another but in most cases the delay is so insignificant that no one would seriously allege misconduct or contend that discipline is warranted. Unlike violations involving corruption or venality, where even one violation requires condemnation and discipline, the determination that a Judge has been guilty of inexcusable procrastination requires a consideration of the length of the delay and its causes. However, Judges must endeavor to dispose of their business promptly and when confronted by delays of the magnitude of those confronting petitioner, they must establish priorities to take into account the time necessary for decision. They must not only judge well but they must also organize their work well. Their conscious failure to recognize these concerns and dispose of the matters before them or, if unable to do so promptly, to take steps to eliminate delays, constitutes a violation of our rules.
There is no evidence that petitioner made adequate provision for his problems or that he ever, because of overwork or disability, asked for administrative relief. Indeed, notwithstanding his precarious situation in a number of cases, and the obvious distractions and demands on his time from the complaints and article 78 proceedings against him, the record indicates that petitioner continued to seek out new difficult cases, apparently unconcerned about the potential for prejudice or destruction of the litigant’s claims in cases pending before him and indifferent to the immeasurable loss of public confidence in the court system resulting from his failure to decide them. Nonetheless, the majority hold that the Commission cannot discipline him for such violations and that the court will not do so. If the Commission was not justified in acting in this case, then I cannot envision one in which it could act to discipline a Judge for failing to promptly dispose of the court’s business.
*308 Accordingly, I dissent.
Chief Judge Wachtler and Judges Titone, Hancock, Jr., and Bellacosa concur in Per Curiam opinion; Judge Simons dissents and votes to accept the determined sanction in an opinion in which Judge Alexander concurs; Judge Kaye taking no part.
Determined sanction rejected, etc.

. The Commission dismissed one count involving a case in which an article 78 proceeding was instituted against petitioner.

. In his brief petitioner suggests, and counsel repeated the contention at oral argument, that an article 78 proceeding is the sole remedy contemplated by the Legislature with respect to delay and that if the Judge disposes of the underlying matter before the article 78 proceeding is decided, he is entitled to absolution. The argument was not pressed and it is refuted by provisions in the Constitution, Judiciary Law, The Code of Judicial Conduct and Rules of the Chief Administrator of the Courts which proscribe delay and provide the mechanism for enforcement of the rules.

. I cannot excuse petitioner’s conduct because of his illnesses, as the majority does. Most of his problems in these cases passed the excusable conduct stage long before the illnesses occurred and petitioner does not rely on them to excuse or explain the delay.

. The majority assures us that administrative action will suffice in the future because new reporting rules should produce better results. Similar rules have been in effect since court unification in 1979, however (see, Historical Note following 22 NYCRR 4.1), and by order of the Appellate Divisions long before that. Petitioner was subject to such rules during the entire period involved in this proceeding and neither the rules nor the extensive efforts of others had any noticeable affect on his performance. Although petitioner contended that the rule requiring him to file status reports on cases pending more than 60 days did not apply to some of the matters before him, he knew of those time constraints and the rule concededly applied to several of the matters before him.

. The majority’s concern over hasty or ill-considered decisions is, in the context of this case, absurd (see, majority opn, at 298).