[899 NE2d 925, 870 NYS2d 819]

In the Matter of DAVID F. JUNG, a Judge of the Family Court, Fulton County, Petitioner. STATE COMMISSION ON JUDICIAL CONDUCT, Respondent.

Argued September 9, 2008; decided October 28, 2008

## POINTS OF COUNSEL

*Capasso & Massaroni,* Schenectady (*Vincent Capasso, Jr.,* of counsel), for petitioner. I. This Court exercises plenary and de novo review of the State Commission on Judicial Conduct's determination. (*Matter of Quinn v State Commn. on Jud. Conduct,* 54 NY2d 386.) II. The State Commission on Judicial Conduct erred in determining that petitioner violated any of the Rules Governing Judicial Conduct. (*People ex rel. Constantino v Lorey,* 28 AD3d 1041; *People v Parker,* 57 NY2d 136; *Matter of Mosso v Mosso,* 6 AD3d 827; *Matter of Kendra M.,* 175 AD2d 657; *People ex rel. Foote v Lorey,* 28 AD3d 917; *Matter of Bauer,* 3 NY3d 158.) III. It is clear that Judge Jung abided by the law and rules with regard to Family Court.

*Edward Lindner,* New York City, *Robert H. Tembeckjian* and *Cathleen S. Cenci* for respondent. Petitioner should be removed from office for his repeated violation of the fundamental rights of litigants. (*Matter of Rodriguez v Feinberg,* 40 NY2d 994; *Matter of Mosso v Mosso,* 6 AD3d 827; *People ex rel. Lobenthal v Koehler,* 129 AD2d 28; *Matter of DeMarco v Raftery,* 242 AD2d 625; *Matter of Lewis v Crosson,* 53 AD2d 1029; *Matter of McNeill v Ressel,* 258 AD2d 64; *Matter of Radjpaul v Patton,* 145 AD2d 494; *Matter of Sales v Gisendaner,* 272 AD2d 997; *Matter of Hohenforst v DeMagistris,* 44 AD3d 1114; *Matter of Tristram K.,* 25 AD3d 222.)

*Law Offices of Schur & Casale, PLLC,* Mayfield (*Anthony Casale* of counsel), for Fulton County Bar Association, amicus curiae. I. The conduct of Judge Jung, a jurist with a previously unblemished record, warrants a disposition less severe than removal. (*Matter of Lonschein,* 50 NY2d 569; *Matter of Quinn v State Commn. on Jud. Conduct,* 54 NY2d 386; *Matter of Cunningham,* 57 NY2d 270; *Matter of Esworthy,* 77 NY2d 280; *Matter of Cohen [State Commn. on Jud. Conduct],* 74 NY2d 272; *Matter of Kiley,* 74 NY2d 364.) II. Sanction of removal would deprive Fulton County of a competent and experienced judge.

### OPINION OF THE COURT

Per Curiam.

Petitioner, a Judge of the Family Court, Fulton County, com-

menced this proceeding to review a determination of the State Commission on Judicial Conduct that sustained five charges of misconduct against him and imposed the sanction of removal from judicial office. Upon our plenary review of the record, we accept the determined sanction.

After serving as a law guardian for more than a decade, in 1989 petitioner was elected to the Fulton County Family Court and in 1992 he was appointed to serve as an Acting Supreme Court Justice. In 2005, petitioner presided over a series of Family Court cases that form the basis of the Commission's findings. By formal complaint dated December 6, 2006, the Commission served him with five charges. Charges I, II and III alleged violations of litigants' right to be heard and of sections 100.1, 100.2 (A) and 100.3 (B) (1) and (6) of the Rules Governing Judicial Conduct (22 NYCRR). Charges I, IV and V alleged violations of litigants' right to counsel and violations of the same sections.*

On April 19, 2007, petitioner, his counsel and Commission counsel entered into a stipulation of facts. A hearing was held on April 26, 2007, and the Referee accepted the stipulation into evidence. Petitioner testified, called two witnesses to testify on his behalf, and submitted additional affidavits attesting to his character. On September 7, 2007, the Referee sustained all five charges based on petitioner's violation of litigants' rights when he entered defaults and sentenced them, in absentia, to jail. The Commission unanimously sustained all charges, concluding that petitioner violated the cited sections of the Rules Governing Judicial Conduct, and imposed the sanction of removal, noting that as a consequence of petitioner's disregard of fundamental rights, five litigants were sentenced to significant terms of incarceration and at least three served several months in jail on the unlawful sentences he imposed.

I. Factual Findings

### DeMagistris

Charge I alleged that while presiding over the case of *Matter of Wendy Lynn Hohenforst v Thomas DeMagistris*, petitioner violated the defendant's due process rights, including the right to be heard and the right to counsel, when he summarily held DeMagistris in default on two family offense petitions and

---

* Charges IV and V also alleged violations of section 100.3 (B) (3) of the Rules Governing Judicial Conduct.

sentenced him in absentia to two consecutive 180-day terms of incarceration notwithstanding that defendant was being held in a courthouse holding cell throughout the proceeding.

Outside of the courtroom prior to a family offense proceeding before petitioner, DeMagistris verbally assaulted counsel for his children's mother, Hohenforst, and was placed in a Family Court holding cell. Petitioner thereafter convened a proceeding in the courtroom and placed on the record a description of the incident, stating that DeMagistris was not in the courtroom because he had been placed under arrest for "criminal behavior" and had thus waived his right to appear. Subsequently, petitioner dismissed counsel for both parties upon their own motions without inquiry as to whether DeMagistris had notice of his counsel's request. Upon excusing counsel for the mother, petitioner asked if she wanted an adjournment, which she declined. Following an inquest, petitioner granted the relief she requested, including divesting DeMagistris of custody of his children, dismissed defendant's cross motion for failure to prosecute, and sentenced defendant to a year of incarceration. Petitioner directed that DeMagistris be served with the orders if he was still in the holding cell.

DeMagistris was released by Supreme Court's grant of a writ of habeas corpus (*see Matter of Hohenforst v DeMagistris*, 44 AD3d 1114 [3d Dept 2007]).

### Constantino

Charge II alleged that in *Matter of Fulton County Department of Social Services v Angelic Constantino*, petitioner violated Constantino's due process rights when he failed to order her produced in court although he knew she was incarcerated in a correctional facility outside the county, summarily found her in default, sentenced her in absentia to six months' incarceration, and revoked her custodial rights.

At the time, petitioner's long-standing policy was that "incarcerated litigants had to request of the court to be produced by the court." After unsuccessful attempts to contact petitioner's court, Constantino, incarcerated in another county, failed to appear for an April 11, 2005 hearing before petitioner on a custody petition and an allegation that she had violated an order of protection. Although petitioner knew that the Fulton County Department of Social Services had served Ms. Constantino with the petition in Schenectady County jail, and acknowledged having been told by counsel for the father's

parents that Constantino was in jail, petitioner denied that he had *actual* knowledge that she was in jail, as he considered counsel's statement hearsay. He later maintained that if Constantino "has a normal IQ and she didn't know to ask [for an order to produce] . . . it's her responsibility to find out." He stated, further, that although the summons did not alert her to his policy, she was obligated to find out by "word of mouth." On April 12, 2005, Constantino called the court from jail and asked why she had not been produced. Court staff informed her of petitioner's policy and advised her to put her concerns in writing, which she did with the assistance of attorney in a letter dated April 15, 2005. Her attorney was told that as "no request was received from Angelic Constantino and the court was in receipt of an affidavit of service," the matter had proceeded upon default.

Constantino was released by Supreme Court's grant of a writ of habeas corpus, affirmed by the Appellate Division (*see People ex rel. Constantino v Lorey*, 28 AD3d 1041 [3d Dept 2006]).

### *DaCorsi*

Charge III alleged that in *Matter of Julie A. Dacre v Dennis A. DaCorsi, Jr.*, petitioner violated DaCorsi's due process rights when, knowing that DaCorsi was incarcerated and unable to appear, he found him in default and sentenced him to nine months in jail.

DaCorsi was due to appear before petitioner on a custody petition on April 28, 2005. According to petitioner's docket sheet, DaCorsi's sister called on April 27, 2005 and informed the court that her brother had been arrested but was due to appear in Family Court the following day. A clerk told her that either the sheriff or DaCorsi himself would have to contact the court and ask that he be produced. Petitioner was informed (although the actual date is in dispute) that someone claiming to be DaCorsi's sister had called, but testified that he had "no idea if it was his sister" and if it was that she "could have gone over to the jail with a piece of paper to sign and she could have delivered it to the court and I would have produced him." Petitioner explained that, in any event, he did not consider the sister's call a request to produce.

Petitioner held DaCorsi in default, and after an inquest DaCorsi lost custody of his children and was sentenced in absentia to consecutive terms of 90 days' and 180 days' incarceration. On June 16, 2006, petitioner granted DaCorsi's motion to vacate the default judgment and for petitioner's disqualification.

*Smith*

Charge IV maintained that in *Matter of Dale A. Rulison v Nickie L. Smith*, petitioner violated Smith's right to counsel when he denied her request for assigned counsel as late, summarily affirmed a magistrate's order that found her in default when she failed to appear for a hearing on a child support matter, and sentenced her to 90 days in jail.

It was petitioner's policy that a litigant seeking assigned counsel in a family offense proceeding had to apply for a public defender within two weeks of initial appearance, regardless of the date of the hearing. On January 12, 2005, Smith appeared before a support magistrate to answer charges that she had violated an order of support. She requested counsel and was given an application for the public defender, and the matter was adjourned until April 27, 2005. On February 8, 2005, Smith submitted an application for representation by a public defender in the child support matter. Petitioner said the application was late and on February 14, 2005 denied it as untimely. On February 14, 2005, Smith also submitted an application for representation in a custody and visitation matter. Petitioner approved that application on February 18, 2005.

On April 27, 2005, Smith failed to appear for the support hearing and the magistrate declared her in default and recommended that she be held in contempt. On May 18, 2005, Smith appeared before petitioner for a confirmation proceeding. Petitioner later explained that the confirmation hearing was "merely [for the judge] to approve what the support magistrate did. . . . Or the judge may, and I emphasize may, conduct an evidentiary hearing, which is not what we were doing in this case." When Smith attempted to defend herself against the petition, petitioner said "I didn't see any objections filed here," confirmed the magistrate's determination and sentenced Smith to jail. Smith said she had sought representation from the public defender and never heard anything; petitioner responded "you'll have to take it up with the Public Defender's Office." Petitioner testified that he did not see, upon reviewing her file, that Smith had been assigned counsel on the custody matter and that he did not attempt to find out if any court attorneys were present at the courthouse that day.

Smith did not appeal or move to vacate petitioner's decision, and was released from jail after paying a "purge."

*Foote*

Charge V alleged that in *Matter of Timothy Foote v Karrie Foote,* petitioner violated Karrie Foote's due process rights when, despite evidence that she was learning-disabled and unable to read, he denied her the right to counsel, summarily affirmed the magistrate's finding of default and sentenced her to 180 days in jail.

Foote appeared before a support magistrate on January 20, 2005, on charges of contempt of court for willful violation of an order of support. She told the magistrate that she could not read and did not have a lawyer. The magistrate told her she could apply for a public defender and adjourned the matter until May 11, 2005. Foote obtained an application but never filed it. On April 4, 2005, she appeared before petitioner on a custody modification petition. Petitioner advised Foote of her right to an attorney and instructed her to fill out an application. The parties met with a court mediator, resolved their custody dispute and returned to petitioner's courtroom for confirmation.

Foote believed that this custody settlement resolved the support matter, and failed to appear before the support magistrate on May 11, 2005. The magistrate declared her in default and recommended that she be held in contempt. On May 25, 2005, Foote appeared, without counsel, at a confirmation proceeding in front of petitioner, and told petitioner she had requested a lawyer. Petitioner responded that it was "too late," later explaining that he meant it was "a double too late" "too late . . . with me and too late . . . with the magistrate."

Petitioner maintained that he could not have sent the *Foote* matter back to the support magistrate or taken steps to obtain counsel for her because he would have violated a uniform rule providing that a litigant is entitled to only one adjournment absent good cause, and he did not find good cause. He confirmed the decision and told Foote he was going to incarcerate her. Foote's mother addressed the court, explaining that Foote couldn't read and that she herself had not had time to read the papers or explain them to her daughter. She stated:

> "I told Karrie that she needs to ask for a lawyer. She needs to be represented by a lawyer. I don't understand how these procedures can go on without her having some kind of representation. Especially when she doesn't even read. . . .

"She [h]as a fourth grade reading level."
Petitioner responded:

> "[Y]ou're telling me that. That doesn't make it a
> fact. But if we had some medical proof that that was
> so, if she had told somebody that, I, I'm not the
> Magistrate, so I didn't hear the case."

Petitioner signed an order committing Foote to the Fulton
County jail. He later acknowledged that Foote herself told the
support magistrate she could not read and that he had "noted
that" in his review of the record. He also recalled her mother
saying "that she had the ability of a fourth grade reader, which
is pretty good ability."

Foote was released by Supreme Court's grant of a writ of ha-
beas corpus nearly two months later. The Appellate Division af-
firmed (*see People ex rel. Foote v Lorey*, 28 AD3d 917 [3d Dept
2006]).

After the Appellate Division's *Foote* decision, petitioner issued
a press release defending his policies and expressing "disap-
pointment" at the determination. Petitioner additionally stated:

> "Henceforth, in an effort to further streamline and
> simplify procedures, since the statute does not
> specifically require the Court to mandate court ap-
> pearances of parties so that confirmation of the Sup-
> port Magistrate's decision can be made in person,
> the Court will simply issue a written confirmation
> unless the Court finds that the Support Magistrate
> erred in some fashion. . . .
>
> "If, at some point, the Appellate Division . . . re-
> considers this issue and reverses itself as it has done
> in the past, or . . . if the Court of Appeals rules in
> favor of our prior policy and procedure, we can and
> will reinstate same."

During the Commission's investigation, petitioner testified
that he wouldn't have handled any of the cases any differently.

## II. Analysis

At issue here is petitioner's denial of due process to litigants
in family offense—specifically custody and support—proceed-
ings. *DeMagistris*, *Constantino* and *DaCorsi* involved denial of
the right to be heard; *DeMagistris*, *Smith* and *Foote* the right to
counsel.

The right to be heard is fundamental to our system of justice
(*see Mullane v Central Hanover Bank & Trust Co.*, 339 US 306,

314 [1950]; *Matter of Jones v Berman*, 37 NY2d 42, 55 [1975]). Parents have an equally fundamental interest in the liberty, care and control of their children (*see Stanley v Illinois*, 405 US 645, 651 [1972]; *Matter of Ella B.*, 30 NY2d 352, 356 [1972]). The right to be heard, therefore, necessarily attaches to family offense proceedings, regardless of a party's status as incarcerated or otherwise detained pursuant to state authority (*see Matter of Tristram K.*, 25 AD3d 222, 226 [1st Dept 2005] ["even an incarcerated parent has a right to be heard on matters concerning her child, where there is neither a willful refusal to appear nor a waiver of appearance"]). This right is no less vital to a proceeding for summary contempt (*see Matter of Katz v Murtagh*, 28 NY2d 234, 238 [1971] [a person subject to incarceration for contempt is entitled to an opportunity to appear and "to offer any reason in law or fact why that judgment should not be pronounced"]; *see Matter of Mosso v Mosso*, 6 AD3d 827, 829 [3d Dept 2004] ["due process requires that . . . the contemnor be afforded 'an opportunity to be heard at a meaningful time and in a meaningful manner' "]; *see also* Family Ct Act § 454 [1], [3] [providing for incarceration "after hearing" on a willful violation of an order of support]).

Integral to this fundamental interest in the liberty, care and control of their children, and coextensive with the right to be heard in a meaningful manner, is a parent's right to representation of counsel in family offense proceedings. "[A]n indigent parent, faced with the loss of a child's society, as well as the possibility of criminal charges, . . . is entitled to the assistance of counsel" (*Ella B.*, 30 NY2d at 356 [codified in 1975 and extended to provide litigants with the right to counsel in custody, family offense and contempt proceedings (*see* Family Ct Act §§ 261, 262 [a] [v], [vi])]). The right to counsel includes the right to notice prior to a court-ordered withdrawal from representation (CPLR 321 [b] [2]; *Matter of Kindra B.*, 296 AD2d 456, 458 [2d Dept 2002]). Waiver of this right must be "unequivocal, voluntary and intelligent"; a court is obligated to make a "searching inquiry" to ensure that it is (*see People v Smith*, 92 NY2d 516, 520 [1998]).

At most, petitioner would now concede that his denial of these rights to litigants amounted to legal error and not misconduct. As we have previously explained, the two are not necessarily mutually exclusive; a pattern of fundamental legal error may be "serious misconduct" (*Matter of Reeves*, 63 NY2d 105, 109 [1984]; *see Matter of Sardino v State Commn. on Jud. Conduct*,

58 NY2d 286, 289 [1983]; *see Matter of McGee v State Commn. on Jud. Conduct*, 59 NY2d 870, 871 [1983]). Moreover, the Court agrees with the Commission that in denying litigants these rights, petitioner also violated the Rules Governing Judicial Conduct.

Although judicial disciplinary proceedings are not punishment (*Matter of Esworthy*, 77 NY2d 280, 283 [1991]), the severe sanction of removal is warranted where a jurist has exhibited a "pattern of injudicious behavior . . . which cannot be viewed as acceptable conduct by one holding judicial office" (*Matter of VonderHeide [State Commn. on Jud. Conduct]*, 72 NY2d 658, 660 [1988]) or an abuse of "the power of his office in a manner that . . . has irredeemably damaged public confidence in the integrity of his court" (*Matter of McGee v State Commn. on Jud. Conduct*, 59 NY2d 870, 871 [1983]). Such behavior is especially "intolerable" in Family Court, "where matters of the utmost sensitivity are often litigated by those who are unrepresented and unaware of their rights" (*Matter of Esworthy*, 77 NY2d at 283). Removal is thus appropriate when a Family Court judge exhibits conduct "which necessarily has the effect of leaving litigants with the impression that our judicial system is unfair and unjust" (*id.* [among other misconduct, "(i)n case after case" judge "neglected to inform litigants appearing before him of their constitutional and statutory rights, including their right to counsel" (*id.* at 282)]).

Here, in four out of five cases, the due process violations at issue resulted from two policies that petitioner effectuated in his courtroom for many years. Two of the violations of the right to be heard stemmed from petitioner's policy that an incarcerated litigant would not be produced for a proceeding unless he or she specifically asked to be produced. This unwritten rule, neither printed on a summons nor communicated to any facility, imposed an onerous and unfair burden on litigants who had no way of knowing what was required of them. Litigants who had previously been incarcerated and produced for matters before other judges were even more disadvantaged by petitioner's anomalous policy. Instead of taking steps to ease their burden, petitioner, in *Constantino* and *DaCorsi*, actually increased it by refusing, under the guise of not having "actual notice" of each litigant's incarceration, to acknowledge attempts to contact the court by family members and litigants themselves. Petitioner's view, however, was that even his own knowledge of a litigant's incarceration would not have excused failure to comply with the

strictures he imposed. As the Commission concluded, such a policy impermissibly "elevated form over substance where liberty and parental rights hung in the balance."

Petitioner's institution of this long-standing policy resulted in gross and repeated deprivation of the fundamental right to be heard, and had grave consequences for litigants. This policy, along with petitioner's unwavering imposition of a two-week time limit on requests for counsel, evidences a "pattern of injudicious behavior" that this Court cannot sustain (*see Matter of VonderHeide*, 72 NY2d at 660). Also significant is petitioner's response to the Appellate Division's two grants of writs of habeas corpus in *Constantino* and *Foote* (*see People ex rel. Constantino v Lorey*, 28 AD3d 1041 [3d Dept 2006]; *People ex rel. Foote v Lorey*, 28 AD3d 917 [3d Dept 2006]; *Matter of Hohenforst v DeMagistris*, 44 AD3d 1114 [3d Dept 2007]). After these reversals, petitioner chose to modify his first policy by increasing notifications, yet continuing to place the burden of production in court on incarcerated litigants. With regard to his second policy, he publicly stated his intent to discontinue confirmation hearings—the proceeding where Smith and Foote invoked their right to counsel—and issue written confirmations instead (*see* press release of April 26, 2007).

Plainly, even the Appellate Division precedents failed to impress the importance of these due process rights upon petitioner in any meaningful way. As in *Matter of Reeves*, these "errors were fundamental and the pattern of repeating them, coupled with an unwillingness to recognize their impropriety, indicate that petitioner poses a threat to the proper administration of justice" (63 NY2d at 110-111).

It is apparent from the record as a whole that petitioner continues to believe that his actions were a permissible exercise of the "wide discretion" given Family Court judges "for dealing with the complexities of family life" (Family Ct Act § 141). He fails to grasp that with such discretion comes grave responsibilities to the litigants before him as well as to their children. While we recognize that petitioner has well served youth in his court and through his extensive involvement in community service, part and parcel of effecting the "best interests" of a child is affording that child's parent the rights inherent in the parental bond. We acknowledge that removal from office is an "extreme sanction" that is imposed only "in the event of truly egregious circumstances" (*Matter of Cunningham*, 57 NY2d 270, 275 [1982]). We conclude that petitioner's steadfast adher-

ence to long-standing policies that have seriously compromised the due process rights of litigants justifies removal.

Accordingly, the determined sanction should be accepted, without costs, and David F. Jung removed from the office of Judge of the Family Court, Fulton County.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur in per curiam opinion.

Determined sanction accepted, etc.