[746 NYS2d 503]

In the Matter of WILLIAM LEWIS KADISH, a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, August 26, 2002

## APPEARANCES OF COUNSEL

*Robert P. Guido*, Syosset (*Nancy A. Bolger* of counsel), for petitioner.

*Michael S. Ross*, New York City, for respondent.

## OPINION OF THE COURT

Per Curiam.

The petitioner served the respondent with a petition dated May 10, 2001, containing 14 charges of professional misconduct. After a preliminary conference on October 3, 2001, and a hearing on November 8, 2001, the Special Referee sustained all 14 charges. The petitioner now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent has submitted a memorandum of law in support of the motion to confirm and asks that the Court limit any sanction imposed to a two-year suspension, retroactive to the date of his self-suspension on May 22, 2000, coupled, if deemed necessary by the Court, with a period of monitoring by the Lawyer's Assistance Program.

The petition contains allegations with respect to four separate clients' transactions:

Robert Elenowitz

Pursuant to a partnership agreement with the complainant dated May 15, 2000, concerning the purchase of a parcel of real estate in Old Westbury, the respondent was entrusted with $50,000. The respondent deposited that sum into his escrow account. Shortly after his receipt of the funds, the real estate transaction fell through. Although the respondent had discretion to use the funds from that deposit remaining in his escrow account, he improperly disbursed them to pay personal obligations directly from his escrow account.

Irv and Sharon Flamer

In or about December 1999, the respondent represented the Flamers in the sale of one home and the purchase of another. The respondent received three checks totaling $205,774.80, which he placed into his escrow account. The respondent received permission from his clients to use that sum as a personal loan after the sale of their home. The loan was to be repaid before the purchase of their new home. The respondent did not reduce the personal loan agreement with his clients to writing. He left the sum in his escrow account and proceeded to make disbursements for personal obligations directly from that account.

Robert Paretti and Mark Bender

In or about February 2000, the respondent received a down payment check on behalf of his clients in the sum of $167,500, pursuant to a real estate transaction. He deposited those funds into his escrow account. The purchasers had entered into an agreement to permit the immediate release of the down payment to the sellers in exchange for an expedited closing date. The respondent received permission from his clients, the sellers, to use the down payment as a personal loan after the buyers agreed to release the down payment for an expedited closing date.

The respondent did not reduce the personal loan agreement with his clients to writing. He left the personal loan in his escrow account and proceeded to disburse funds directly from his account to pay personal obligations.

Jerome Lazarowitz

The respondent received a check in the sum of $69,500 on behalf of his client as a down payment in a real estate transaction. He deposited that sum into his escrow account on or about March 29, 2000. The purchasers had entered into an agreement to permit the immediate release of the down payment to the sellers in exchange for an expedited closing date. The respondent received permission from his client to use a portion of the $69,500 as a personal loan after they agreed to a release of the down payment for an expedited closing date.

The respondent did not reduce the personal loan agreement with his client to writing. He left the personal loan in his escrow account and proceeded to disburse funds directly from his escrow account to pay personal obligations.

The respondent deposited gambling proceeds into his escrow account. He proceeded to disburse gambling proceeds directly from his escrow account to pay personal obligations.

The respondent failed to maintain complete copies of all checks, deposit slips and withdrawal slips from his escrow account. He also failed to maintain a check ledger and/or register for his escrow account.

With respect to the Elenowitz matter, it is alleged that the respondent used funds maintained in his escrow account to directly pay personal obligations, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) (Charge One), and engaged in conduct which adversely reflects upon his fitness to practice law, in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (Charge Two).

With respect to the Flamer matter, it is alleged that the respondent commingled personal funds in his escrow account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) (Charge Three); failed to reduce a personal loan agreement with clients to writing, in violation of DR 5-104 (a) (3) (22 NYCRR 1200.23 [a] [3]) (Charge Four); and engaged in conduct which adversely reflects upon his fitness to practice law, in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (Charge Five).

With respect to the Paretti/Bender matter, it is alleged that the respondent commingled personal funds in his escrow account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) (Charge Six); failed to reduce a personal loan agreement with his clients to writing, in violation of DR 5-104 (a) (3) (22 NYCRR 1200.23 [a] [3]) (Charge Seven); and engaged in conduct which adversely reflects upon his fitness to practice law, in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (Charge Eight).

With respect to the Lazarowitz matter, it is alleged that the respondent commingled personal funds in his escrow account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) (Charge Nine); failed to reduce a personal loan agreement with his client to writing, in violation of DR 5-104 (a) (3) (22 NYCRR 1200.23 [a] [3]) (Charge Ten); and engaged in conduct which adversely reflects upon his fitness to practice law, in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (Charge Eleven).

Charge Twelve alleges that the respondent commingled personal funds in the form of gambling proceeds in his attorney escrow account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

Charge Thirteen alleges that the respondent has engaged in conduct which adversely reflects upon his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge Fourteen alleges that the respondent failed to maintain required banking information and record keeping, in violation of Code of Professional Responsibility DR 9-102 (d) (1), (2) and (9) (22 NYCRR 1200.46 [d] [1], [2], [9]).

In view of the respondent's admissions and the evidence adduced, the Special Referee properly sustained all 14 charges. The motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the respondent emphasizes his compulsive gambling

disease, his efforts at rehabilitation, his lack of venality, and the absence of harm to clients as mitigating factors. The petitioner submits that the respondent has no prior disciplinary history and that all of the "loans" to the respondent have been reimbursed. Notwithstanding the respondent's testimony that he used the subject funds as loans with the nonwritten consent of the parties involved, it is undisputed that he commingled funds and extensively used his escrow account as his own personal account. The petitioner did not present any evidence to refute the respondent's testimony that he used the escrowed funds as personal loans with the acquiescence of his clients. In view of the respondent's failure to maintain proper records and his admission that he is still not cured of his gambling addiction, the respondent's disbarment is warranted.

PRUDENTI, P.J., RITTER, SANTUCCI, ALTMAN and KRAUSMAN, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, William Lewis Kadish, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, William Lewis Kadish is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law. [As amended by unpublished order entered Dec. 23, 2002.]