OPINION OF THE COURT
 

 Per Curiam.
 

 Petitioner, a Judge of the Family Court, Montgomery County, seeks review of a determination of the State Commission on Judicial Conduct sustaining two charges of misconduct against him and removing him from office (NY Const, art VI, § 22; Judiciary Law § 44). The Commission commenced an investigation after receiving a written complaint dated December 1, 1998 from the Deputy Chief Administrative Judge. The complaint alleged that petitioner had actively and openly pursued a romantic relationship with a court attorney; argued in open court with her after she had asked him to stop pursuing her; engaged in conduct which may constitute sexual harassment of a court employee; made personally denigrating remarks to court employees; allowed his personal problems to affect his performance and conduct at the court; retaliated against the Chief Clerk for advising the District Administrative Judge of petitioner’s conduct; appeared in court in a disheveled condition and acted abruptly towards court employees; and engaged in conduct that created and fostered a division between different groups of court employees.
 

 The Commission served a copy of the complaint on petitioner and requested his appearance before a member of the Commission to testify on March 25, 1999
 
 (see,
 
 Judiciary Law § 44 [3]). In the interim, petitioner prepared and signed an ex parte order reinstating a friend’s driving license that had been suspended for failure to pay child support. The Commission
 
 *124
 
 put petitioner on written notice that he would be asked about the ex parte order during the appearance. Petitioner made no objection to Commission Counsel’s inquiry about the ex parte order prior to or during the appearance.
 

 Subsequently, the Commission filed a Formal Written Complaint pursuant to Judiciary Law § 44 (4) containing two charges that alleged violations of sections 100.1, 100.2 (A), 100.2 (B), 100.3 (B) (3), 100.3 (B) (6), 100.3 (C) (1), 100.4 (A) (2) of the Rrdes Governing Judicial Conduct (22 NYCRR). Charge I alleged that petitioner created a hostile work environment for his law clerk, engaged in erratic behavior that both detracted from the dignity of judicial office and interfered with his judicial duties and the work of the court, and mistreated the Chief Clerk and undermined her authority. Charge II concerned the ex parte order. When served with the Formal Written Complaint, petitioner responded by filing a Verified Answer which did not contest the procedural regularity of either charge. After a full evidentiary hearing, the Referee filed his report. The Commission sustained Charges I and II and directed that petitioner be removed from office.
 

 Based upon our independent review of the record, and giving due deference to the credibility determinations of the Referee and the Commission (see,
 
 Matter of Sims,
 
 61 NY2d 349, 353,
 
 rearg denied
 
 62 NY2d 884), we find no reason to disturb the Commission’s findings.
 

 As a threshold matter, petitioner argues that the Commission lacked jurisdiction to investigate the allegations contained in Charge II because the Commission neither received a written complaint nor filed an administrator’s complaint concerning those allegations.
 

 In
 
 Matter of New York State Commn. on Judicial Conduct v Doe
 
 (61 NY2d 56, 60), we recognized that “[t]he Legislature * * * circumscribed the investigatory powers of the commission by requiring, as a prerequisite to initiating an investigation, that it either receive a complaint from a citizen (Judiciary Law, § 44, subd 1) or file a complaint on its own motion (Judiciary Law, § 44, subd 2).” Petitioner’s misconduct as to Charge II occurred , approximately two weeks before his initial appearance and more than three months after the Commission appropriately began its investigation in response to a written complaint. The record does not reflect how this matter came to the attention of Commission Counsel during the course of its investigation. However, when Commission Counsel became
 
 *125
 
 aware of it, he notified petitioner that he intended to question him about the matter. The Commission did not attempt to expand its investigation exponentially by seeking to inquire about broad categories of conduct without a factual basis for inquiry. While this conduct may well have required a second “complaint” pursuant to the Judiciary Law, petitioner’s after-the-fact challenge to the scope of the inquiry at his initial appearance was waived by his failure to object to it. Nor did petitioner assert that he was not able to identify the matter in question or to prepare adequately for his testimony at the March 25 appearance. Thus, the principal purposes of a complaint were satisfied.
 

 On the merits, petitioner argues that the Commission’s determination cannot be reconciled with the record and the law. We disagree. Here, petitioner’s conduct detracted from the dignity of his office, disrupted the operations of the court, and constituted an abuse of his judicial and administrative power. The record also reveals that petitioner took hostile and retaliatory actions against his law clerk. Indeed, petitioner not only interfered with her then-boyfriend’s service as a law guardian but also sent a letter to the District Administrative Judge expressing a willingness to fire his law clerk after she had been transferred to another court.
 

 Additionally, petitioner’s behavior became increasingly erratic after his relationship with his law clerk ended. On Friday, June 19, 1998 petitioner claimed he suffered from a panic attack at lunchtime. Following another panic attack later that day, he instructed his deputy clerk to adjourn all cases for the following week, seriously disrupting the work of the court. The District Administrative Judge, who learned of these events through a call from the Chief Clerk, instructed petitioner not to go back on the bench until after they met to discuss why petitioner unexpectedly took time off. After this call, petitioner promptly went to the court and questioned staff members about their conversations with the District Administrative Judge. The District Administrative Judge called petitioner at the courthouse, told him to leave immediately, and then barred him from the building until further notice. Petitioner returned to the court at the end of June 1998 after meeting with the District Administrative Judge.
 

 As the situation involving petitioner and his law clerk escalated, tension and divisiveness pervaded the courthouse work environment and petitioner’s relationship with the Chief Clerk soured. An office assistant who had been on maternity
 
 *126
 
 leave described that when she returned to the courthouse the environment was “very stressful” and a “hard place to work.” In one incident, petitioner followed the Chief Clerk to her office where he pounded on her closed door and yelled at her as she called the Deputy Administrative Judge to report on petitioner’s behavior. One of several employees who watched the scene testified that she was afraid of petitioner that day and found the work environment “unbearable.” Later that day, the Deputy Chief Administrative Judge called petitioner to discuss his conduct, but petitioner responded with hostility and hung up.
 

 With respect to the second charge, it is undisputed that petitioner prepared and signed an order to show cause that directed the Department of Motor Vehicles to terminate the license suspension of a social acquaintance, notwithstanding his failure to pay child support arrears (see, Family Ct Act § 458-a). It is also undisputed that petitioner examined the individual’s Family Court file before drafting and signing the order and was aware that he was in arrears in his child support payments. Notably, petitioner later recused himself from hearing the motion to avoid an appearance of impropriety given that he knew both the acquaintance and his wife.
 

 After a careful review of the record we find ample evidence of petitioner’s misconduct and see no reason to disturb the findings of the Commission
 
 (see, Matter of Shilling,
 
 51 NY2d 397, 403). The charges are established by petitioner’s own testimony, the testimony of other credible witnesses, the subjective nature of his defense, and his inability to controvert the evidence of his misconduct.
 

 Petitioner’s lack of contrition and his additional improprieties during the course of the investigation only exacerbate his misconduct, especially considering that he was admonished by the Commission on July 18, 1997 for disparaging a litigant from the bench. Petitioner has persistently failed to recognize and acknowledge the impropriety of his behavior. Instead, he consistently blames coworkers for his personal and professional failings. The record reveals that petitioner was resistant and uncooperative with administrators, and showed a lack of respect for their repeated attempts to address problems he helped create. Finally, petitioner signed the ex parte order for his friend during the course of the investigation into his misconduct only two weeks before he was to testify before the Commission. This cavalier behavior illustrates petitioner’s insensitivity to the nature of the charges and proceedings against him.
 

 
 *127
 
 It is well settled that “members of the judiciary are held to higher standards of conduct than members of the public at large and that relatively slight improprieties subject the judiciary as a whole to public criticism and rebuke”
 
 (Matter of Aldrich v State Commn. on Judicial Conduct, 58
 
 NY2d 279, 283;
 
 see also, Matter of Kuehnel v State Commn. on Judicial Conduct;
 
 49 NY2d 465, 469;
 
 Matter of Spector v State Commn. on Judicial Conduct,
 
 47 NY2d 462, 468-469). In addition to the gravity of any wrongdoing, the effect of petitioner’s conduct upon public confidence in his character and judicial temperament must be considered
 
 (see, Aldrich, supra; see also, Matter of Quinn v State Commn. on Judicial Conduct,
 
 54 NY2d 386, 392).
 

 Applying these principles to the instant case, we agree with the Commission that petitioner is unfit to continue as a Judge and should be removed from office. The sanction of removal is reserved only for those instances involving “truly egregious” conduct
 
 (Matter of Assini,
 
 94 NY2d 26, 31). We have recognized, however, “that the ‘truly egregious’ standard is measured with due regard to the fact that Judges must be held to a higher standard of conduct than the public at large”
 
 (id.
 
 [quoting
 
 Matter of Collazo,
 
 91 NY2d 251, 255]). Here, the record amply supports the conclusion that petitioner’s misconduct “transcends poor judgment” and warrants removal
 
 (Matter of Sims,
 
 61 NY2d, at 356,
 
 supra).
 

 Accordingly, the determined sanction should be accepted, without costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Cipabick, Wesley, Rosenblatt and Gbaffeo concur in Per Curiam opinion.
 

 Determined sanction accepted, without costs, and Robert N. Going removed from the office of Judge of the Family Court, Montgomery County.