OPINION OF THE COURT
 

 Per Curiam.
 

 The Commission on Judicial Conduct sustained five charges of misconduct and determined that petitioner, a Justice of the Supreme Court, should be removed from office
 
 (see
 
 NY Const, art VI, § 22; Judiciary Law § 44). Based on our review of the evidence, we conclude petitioner has engaged in misconduct warranting removal.
 

 As a preliminary matter, we reject petitioner’s argument that this proceeding must be dismissed and the Commission determination vacated due to a decision of the United States District Court for the Northern District of New York that invalidated two of the rules petitioner was determined to have violated in this case, sections 100.1 and 100.2 of the Rules Governing Judicial Conduct (22 NYCRR)
 
 (see Spargo v New York State Commn. on Jud. Conduct,
 
 244 F Supp 2d 72 [US Dist Ct, ND NY 2003]). Petitioner did not raise a constitutional challenge to the validity of the Rules either before the Commission or in his brief to this Court. In any event, we are not bound by the Federal District Court’s decision
 
 (see People v Kin Kan,
 
 78 NY2d 54, 59-60 [1991];
 
 New York R.T. Corp. v City of New York,
 
 275 NY 258, 265 [1937],
 
 affd
 
 303 US 573 [1938]).
 

 Petitioner was elected Judge of the Civil Court of the City of New York and served in that capacity from January 1995 through December 1997. In November 1997, he was elected to Supreme Court in the Second Judicial District for a term commencing January 1, 1998. The five charges of misconduct sustained by the Commission centered on petitioner’s misuse of his áttorney escrow account while he was a practicing attorney and after he became a Civil Court Judge. Evidence received at the hearing established that petitioner vacated a rent-stabilized apartment in 1992 and installed his brother-in-
 
 *59
 
 law in the apartment over the objection of the landlord. . After the brother-in-law’s attempts to pay rent directly to the landlord failed, he forwarded his rental payments to petitioner, making all but two of the checks payable to petitioner “as attorney.” This continued each month for several years resulting in petitioner receiving more than $15,000 in rent from his brother-in-law.
 

 Petitioner deposited at least $7,000 of the rent money in his attorney escrow account. The record reveals that petitioner used a portion of the funds to pay personal expenses, writing checks directly from his escrow account to “cash,” to himself, and to various creditors. As of December 1994, shortly before petitioner took the bench, his attorney escrow account had a balance of approximately $1,900. While a sitting judge, petitioner continued using the account for personal purposes, including writing checks to cash, his wife, an automotive finance company, a support collection unit, a church, an extermination firm and a political club.
 

 During the Commission investigation, petitioner stated he had no legal right to retain the rent money. Rather, he claimed he was holding the rent for the landlord with the intent to deliver it at a future time. At the hearing, however, petitioner contended he had lawfully sublet the apartment to his brother-in-law and therefore had a right to personally collect rent on the apartment and to use the rent proceeds to pay personal expenses. This explanation contradicted petitioner’s earlier statement that he was holding the money for the landlord and was not consistent with petitioner’s decision to deposit the money in his attorney escrow account. In addition to offering contradictory statements, petitioner failed to respond'to six written requests for information forwarded to him by Commission attorneys, which delayed and impeded the investigation.
 

 It is well settled that an attorney may not commingle personal funds with those held in trust for clients or others, nor may an attorney use an escrow account to pay personal expenses
 
 (see Matter of Kadish,
 
 299 AD2d 78 [2d Dept 2002];
 
 Matter of Land,
 
 299 AD2d 83 [1st Dept 2002];
 
 Matter of Lasher,
 
 296 AD2d 163 [2d Dept 2002];
 
 Matter of Stevens,
 
 294 AD2d 1 [1st Dept 2002],
 
 lv denied
 
 98 NY2d 611 [2002];
 
 Matter of Croak,
 
 277 AD2d 871 [3d Dept 2000];
 
 Matter of Summer,
 
 238 AD2d 86 [4th Dept 1997]). Indeed, as this case demonstrates, confusion regarding the legal interests of an attorney and third parties ensues when an attorney fails strictly to segregate personal or business funds from trust funds or to identify and properly
 
 *60
 
 safeguard funds deposited in an escrow account. Whether petitioner was holding the funds in trust for the landlord (as he maintained during the investigation) or collecting the rent under a sublease (as he contended during the hearing), the fact remains that petitioner deposited a significant portion of the rent proceeds in his attorney escrow account. He then commingled those monies with his clients’ funds and improperly made disbursements directly from the escrow account to satisfy myriad personal obligations.
 

 Misuse of an attorney escrow account constitutes serious misconduct that may, in some instances, result in disbarment
 
 (see generally Matter of Fitzgerald,
 
 100 NY2d 52 [2003]). Here, petitioner commingled funds over a substantial period of time and repeatedly used his attorney escrow account to pay personal expenses — conduct that continued after petitioner was elected to the bench. This misconduct was significantly compounded by petitioner’s persistent failure to cooperate with the Commission investigation and his marked lack of candor as evidenced by the inconsistent and evasive explanations he offered at different points in the proceeding
 
 (see Matter of Intemann,
 
 73 NY2d 580 [1989];
 
 Matter of Cooley,
 
 53 NY2d 64 [1981]). Upon our review of the record, giving “due regard to the fact that Judges must be held to a higher standard of conduct than the public at large”
 
 (Matter of Going,
 
 97 NY2d 121, 127 [2001]), we conclude that removal is the appropriate sanction.
 

 Petitioner claims that the Commission determination is tainted based on his triple-hearsay allegation that a Commission member made statements to a third party indicating prejudgment of petitioner’s case. Although petitioner apparently learned of the allegations prior to his appearance before the full Commission, he chose not to timely raise the issue but instead moved to reopen the proceeding after the determination had been issued. The Commission denied petitioner’s motion.
 

 A Commission decision denying a motion for reconsideration is not reviewable by this Court, nor may we review materials submitted in connection with a postdetermination motion that were not considered by the Commission
 
 (see Matter of Shaw,
 
 96 NY2d 7, 12 [2001]). Thus, our review is limited to assessing “the record as it was before the Commission at the time of the original determination”
 
 (id.).
 
 In this regard, however, we note that this Court does not merely echo the Commission’s analysis but conducts its own plenary review of
 
 *61
 
 the facts and law to determine whether a finding of misconduct should be sustained and sanction upheld
 
 (see
 
 Judiciary Law § 44 [9]). The evidentiary record on which we rely in this case was developed at the hearing conducted by a referee prior to petitioner’s appearance before the members of the Commission.
 

 Accordingly, the determined sanction should be accepted, without costs, and Reynold N. Mason removed from his office as Justice of the Supreme Court.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt, Grafpeo and Read concur in per curiam opinion.
 

 Determined sanction accepted, without costs, and Reynold N. Mason removed from the office of Justice of the Supreme Court, Kings County.