[17 NE3d 1127, 993 NYS2d 531]

In the Matter of CATHRYN M. DOYLE, Surrogate of Albany County, Petitioner. STATE COMMISSION ON JUDICIAL CONDUCT, Respondent.

Argued June 5, 2014; decided June 26, 2014

**POINTS OF COUNSEL**

*Dreyer Boyajian LLP*, Albany (*William J. Dreyer* and *Craig M. Crist* of counsel), for petitioner. I. Judge Cathryn M. Doyle's good faith error of law does not constitute misconduct. (*Matter of LaBelle*, 79 NY2d 350; *Matter of Watson*, 100 NY2d 290; *Matter of George [State Commn. on Jud. Conduct]*, 22 NY3d 323; *Matter of Dixon v State Commn. on Jud. Conduct*, 47 NY2d 523.) II. The State Commission on Judicial Conduct made findings of fact that were not based on the record. (*Matter of Skinner*, 91 NY2d 142; *Matter of Kiley*, 74 NY2d 364.) III. The extreme sanction of removal is excessive under the circumstances. (*Matter of Cunningham*, 57 NY2d 270; *Matter of Watson*, 100 NY2d 290; *Matter of Kiley*, 74 NY2d 364; *Matter of Marshall*, 8 NY3d 741; *Matter of George [State Commn. on Jud. Conduct]*, 22 NY3d 323; *Matter of Sims [State Commn. on Jud. Conduct]*, 61 NY2d 349; *Matter of LaBombard [State Commn. on Jud. Conduct]*, 11 NY3d 294; *Matter of Assini*, 94 NY2d 26; *Matter of Robert*, 89 NY2d 745; *Matter of Conti*, 70 NY2d 416.)

*Robert H. Tembeckjian*, Albany (*Edward Lindner, Mary C. Farrington, Cathleen S. Cenci* and *S. Peter Pedrotty* of counsel), for respondent. I. Petitioner committed judicial misconduct under any reasonable, "good faith" interpretation of the rules, the precedents of this Court, prior State Commission on Judicial Conduct determinations and pertinent advisory opinions. (*Matter of Intemann*, 73 NY2d 580; *Matter of Conti*, 70 NY2d 416; *Matter of Robert*, 89 NY2d 745; *Long v State of New York*, 7 NY3d 269; *Matter of Feinberg*, 5 NY3d 206; *Matter of Roberts*, 91 NY2d 93; *Matter of Young [State Commn. on Jud. Conduct]*, 19 NY3d 621; *Matter of LaBombard [State Commn. on Jud. Conduct]*, 11 NY3d 294; *Matter of Fabrizio*, 65 NY2d 275; *Matter of Durchin*, 217 AD2d 582.) II. Petitioner should be removed from office. (*Matter of Young [State Commn. on Jud. Conduct]*, 19 NY3d 621; *Matter of LaBombard [State Commn. on Jud. Conduct]*, 11 NY3d 294; *Matter of Intemann*, 73 NY2d 580;

*Matter of Conti*, 70 NY2d 416; *Matter of Robert*, 89 NY2d 745; *Matter of Fabrizio*, 65 NY2d 275; *Matter of Roberts*, 91 NY2d 93; *Matter of Hedges*, 20 NY3d 677; *Matter of Kuehnel v State Commn. on Jud. Conduct*, 49 NY2d 465; *Matter of Hamel [State Commn. on Jud. Conduct]*, 88 NY2d 317.)

## OPINION OF THE COURT

Per Curiam.

Petitioner, the Albany County Surrogate, seeks review of a determination of the Commission on Judicial Conduct which sustained three charges of misconduct against her and directed that she be removed from office (*see* NY Const, art VI, § 22; Judiciary Law § 44). We agree with the findings of misconduct and uphold the sanction of removal.

In September 2012, petitioner was served with a formal written complaint alleging three charges of judicial misconduct based on her failure to disqualify herself from matters involving her close friend and personal attorney Thomas J. Spargo, her campaign manager Matthew J. Kelly and a second personal attorney William J. Cade. In each charge, petitioner was alleged to have violated sections 100.1; 100.2 (A) and (C) and 100.3 (E) (1) and (F) of the Rules Governing Judicial Conduct (22 NYCRR).

Thomas Spargo is a former Supreme Court Justice who was removed from office by the Commission in 2006 based on the active solicitation of contributions for his legal fund from attorneys who appeared before him. The fund, referred to as the "Spargo trust," had been established to help pay for legal expenses Spargo incurred in his federal litigation challenging the constitutionality of certain provisions of the Code of Judicial Conduct and seeking to enjoin the Commission from proceeding against him (*see Spargo v New York State Commn. on Jud. Conduct*, 351 F3d 65 [2d Cir 2003]).

Petitioner is the godmother to Spargo's son and Spargo had been a good friend of hers for approximately 40 years. Indeed, petitioner had expressed that Spargo was "as close as a friend can get." He was also a frequent visitor to petitioner's chambers. In addition, Spargo served as her personal attorney. He represented petitioner in a personal injury action commenced in March 2008 and a tax certiorari proceeding com-

menced in July 2008, both of which remained pending at the time of his disbarment in December 2009.*

It is important to note that, in February 2007, petitioner had been censured for her misleading and evasive testimony given in connection with the Commission's investigation of her role in the "Spargo trust."

Between February 2008 and May 2009, petitioner presided over four matters in which Spargo was representing the moving parties. She took actions including signing decrees granting letters of administration and admitting a will to probate. In each matter (all uncontested proceedings), the judge signed the decree on the day the petition was submitted. At least two of the matters were commenced when Spargo provided the papers directly to the judge, instead of filing them with the clerk's office. It is worth noting that petitioner signed the Chief Clerk's name to some of the decrees in Spargo's matters.

Petitioner also took judicial action in four estates in which Matthew J. Kelly was representing the moving parties. Kelly had managed petitioner's 2010 campaign for reelection to Surrogate's Court and also held a leadership role in her 2007 campaign for the Democratic nomination for the office of Supreme Court Justice. Kelly was heavily involved in the 2007 campaign, which lasted from mid-June to late September of that year. Significantly, petitioner's campaign accountant had made notes after his initial meeting with her law clerk indicating his understanding that Kelly was the campaign manager. Among other things, Kelly had organized a campaign fundraiser, including having invitations printed and mailed out. In addition, Kelly signed the letters issuing pro rata refunds of the remaining campaign donations after petitioner failed to earn the party nomination. Subsequent letters notifying certain contributors that clerical errors had been made in the calculation of the refunds and requesting the return of over-reimbursements were likewise sent out under Kelly's name.

While the 2007 campaign was ongoing, the judge granted Kelly's petition to invade the corpus of a trust of which he was a trustee. In addition, in 2010, while Kelly was actively working on her reelection campaign and just two days after both individuals attended her campaign fundraiser, the judge signed

---

* Spargo was disbarred, pursuant to his disciplinary resignation, following his federal felony conviction for attempted extortion and soliciting a bribe (*see Matter of Spargo*, 68 AD3d 1242 [3d Dept 2009]).

a decree admitting a will to probate as Kelly had petitioned. She also issued various orders or decrees relating to two other estates involving Kelly within the two-year period after he had worked on her 2007 campaign. In one of those proceedings, there was a question as to whether Kelly's client had exerted undue influence and Kelly had testified before petitioner as a witness at a SCPA 1404 hearing concerning the decedent's mental condition. Although that hearing was held in May 2007, prior to the start of the 2007 campaign, the judge continued to preside over the ongoing proceedings after Kelly became involved with her campaign.

The third individual, William J. Cade, was petitioner's personal attorney and had represented her before the Commission in the proceeding that resulted in her February 2007 censure. In February 2008, petitioner presided over an estate matter submitted by Cade and signed a decree granting limited letters of administration.

Petitioner does not dispute that she presided over the matters at issue, but asserts that she made a good faith error of law in concluding that she could hear these uncontested, nondiscretionary matters. She testified that she routinely recused herself when these individuals appeared before her in her capacity as an Acting Supreme Court Justice but, given the unique nature of Surrogate's Court practice, where many proceedings are submitted on consent and the Surrogate's actions are often dictated by statute, she believed that there could be no appearance of impropriety or favoritism.

Petitioner maintains that, prior to 2011, the ethics opinions were unclear as to a Surrogate's disclosure or recusal obligations in nonadversarial matters. However, a judge's obligation to disqualify herself based on the appearance of impropriety has long been in place and has not been dependent on the nature of the proceeding. For instance, in *Matter of Intemann* (73 NY2d 580, 582 [1989]), a Surrogate was removed for, among other things, sitting on matters brought by an attorney who was a "close friend, business associate and personal attorney." Moreover, the clear thrust of the judicial ethics opinions since at least 1994 has been that a Surrogate should recuse herself from "routine, non-contested or administrative" matters involving attorneys with whom she has a relationship that could give rise to an appearance of impropriety or raise a question as to the judge's impartiality (*see* Advisory Comm on Jud Ethics Op 94-12

[1994] [campaign manager], available at http://www.nycourts. gov/ip/judicialethics/opinions/94-12.htm; Advisory Comm on Jud Ethics Op 94-05 [1994] [colleagues at former law firm], available at http://www.nycourts.gov/ip/judicialethics/opinions/94-05.htm). It is only by an overly restrictive interpretation of her ethical obligations that petitioner reached a different conclusion.

As to the first charge, petitioner plainly should have disqualified herself from any matters involving her close friend and personal attorney Thomas Spargo. That Spargo was a frequent visitor to her chambers and commenced certain of these proceedings directly with the judge, instead of through the clerk's office, enhances the appearance of impropriety and favoritism. The charge was properly sustained.

Likewise, the second charge, pertaining to Matthew Kelly was appropriately sustained. Petitioner took the position before the Commission that Kelly was merely a volunteer in 2007 and that her bid for the Supreme Court nomination was not a campaign—she was merely "testing the waters." Regardless of whether Kelly held the title of "campaign manager" for the 2007 effort, he clearly exercised a leadership role and was heavily involved in the campaign. Where, as here, an individual has such a prominent role in the campaign, recusal is required (*see* Advisory Comm on Jud Ethics Op 04-106 [2004], available at http://www.nycourts.gov/ip/judicialethics/opinions/04-106.htm). Sitting on matters involving Kelly, especially while the campaigns were active, gave rise to the appearance of impropriety.

Regarding the third charge, petitioner presided over a matter brought by her personal attorney William Cade within the two-year period after he represented her before the Commission (*see Matter of Conti*, 70 NY2d 416, 419 [1987]; Advisory Comm on Jud Ethics Op 99-67 [1999]). This was improper and the charge was appropriately sustained.

The Rules Governing Judicial Conduct create no distinction between contested and uncontested/ministerial matters. The perception that these attorneys were in a position to be accorded preferential treatment is based on their relationships to the judge, not the type of proceedings. As the Commission pointed out, assuming that petitioner actually believed recusal was unnecessary under existing precedent and that there could be no appearance of impropriety or favoritism in her presiding

over the matters involving these three individuals, her behavior reflects "exceedingly poor judgment and an inability to recognize impropriety."

We further observe that, the matters at issue being uncontested, the possibility of remittal was not available (*see* Rules Governing Judicial Conduct [22 NYCRR] § 100.3 [F]). In any event, there is no indication that petitioner made any attempt whatsoever at disclosure here. It is also important to point out that the absence of an opposing party does nothing to lessen the appearance of impropriety (*see* Advisory Comm on Jud Ethics Op 94-05 [1994]). In such situations, the judge has an equal obligation to guard against the impression of favoritism.

Petitioner contends that the sanction of removal is excessive under the circumstances because her misconduct amounted to an error in judgment flowing from her misinterpretation of what was permissible under the ethics opinions. She points to certain mitigating factors, most significantly that there was no indication of personal gain and that the nine matters at issue represent only a tiny fraction of the thousands of Surrogate's Court proceedings she handled during the relevant time period. Petitioner maintains that her conduct does not rise to the level of "truly egregious" behavior that would warrant the harshest punishment (*see Matter of Going*, 97 NY2d 121, 127 [2001]). We have explained, "however, that the truly egregious standard is measured with due regard to the fact that Judges must be held to a higher standard of conduct than the public at large" (*Going*, 97 NY2d at 127 [internal quotation marks and citations omitted]).

Petitioner discounts the significance of her prior censure. The mere existence of a prior censure would be noteworthy regardless of whether it was related to the instant misconduct (*see e.g. Matter of Kuehnel v State Commn. on Jud. Conduct*, 49 NY2d 465, 469-470 [1980]). While the misconduct at issue is not of the same type that had resulted in her prior censure, it is not, as petitioner maintains, "wholly unrelated." Rather, the 2007 censure, issued only a short time before the events under consideration, stemmed from her relationship with one of the same individuals. Without question, a heightened awareness of and sensitivity to any and all ethical obligations would be expected of any judge after receiving a public censure. Petitioner's failure to exercise that vigilance within just a year of her prior discipline is persuasive evidence that she lacks the judgment necessary to her position. Under the circumstances, the

2007 censure constitutes a "significant aggravating factor" (*see Matter of George [State Commn. on Jud. Conduct]*, 22 NY3d 323, 329 [2013]) and the sanction of removal is appropriate.

Accordingly, the determined sanction should be accepted, without costs, and Cathryn M. Doyle removed from the office of Surrogate of Albany County.

PIGOTT, J. (dissenting). Judge Doyle's tenure is remarkable. She served for 20 years as Chief Clerk of the Albany County Surrogate's Court. She was an Adjunct Professor of Law at Albany Law School teaching courses on trusts and estates and Surrogate's Court procedure. She has been a frequent lecturer for the New York State Bar Association, Surrogate Judges Association and the Office of Court Administration. She also served as an Acting Supreme Court Justice by designation of the Office of Court Administration.* The voters of Albany County elected her Surrogate twice.

Judge Doyle was first elected Surrogate in 2000 and reelected in 2010. She presided over a court that has processed over 3,500 cases annually. The charges here are few and minor and involve only an "appearance of impropriety" and concededly resulting in no impropriety in-fact. Nevertheless, this Court now upholds the sanction of her removal from office.

This Court has the "authority not only to 'review the commission's findings of fact and conclusions of law,' but also to accept or reject the sanction determined by the commission, impose a different sanction, or impose no sanction at all" (*Matter of Cunningham*, 57 NY2d 270, 274 [1982]). We therefore are not restricted to reviewing the proceedings below for errors of law alone but, to the contrary, we are required to review the factual findings of the State Commission on Judicial Conduct. "Thus, in essence, there is a determination *de novo*" (*id.*). We have also previously stated that "[r]emoval is excessive where the misconduct amounts solely to poor judgment, even extremely poor judgment" (*Matter of Skinner*, 91 NY2d 142, 144 [1997]).

---

* Designation as Acting Supreme Court Justice is made by the Chief Administrator of the Courts in his or her discretion upon consultation with and agreement by the Presiding Justice of the appropriate Appellate Division (22 NYCRR 121.1). In making such selection, the Chief Administrator receives recommendations from an evaluatory panel consisting of the appropriate Deputy Chief Administrator of the Courts and the Administrative Judge of the Court where the Judge serves (22 NYCRR 121.2 [a]). In determining the capability of judges eligible for assignment, the evaluatory panel considers four criteria: productivity, scholarship, temperament and work ethic (22 NYCRR 121.2 [b] [1]-[4]).

I agree with the dissenting Commission members that censure is the more appropriate sanction. As the dissenters noted, the referee who heard and witnessed Judge Doyle testify found her to be a "credible and candid witness" who "told the truth." And while her disciplinary history should be considered, it does not elevate the sanction to removal on these facts, since the earlier discipline was not related to the alleged misconduct here. Finally, as the dissenting Commission members properly noted, "[I]f the findings of misconduct do not firmly place the judge over the line into the removal realm of 'truly egregious circumstances,' I think we must censure."

Chief Judge LIPPMAN and Judges READ, SMITH, RIVERA and ABDUS-SALAAM concur in per curiam opinion; Judge PIGOTT dissents and votes to censure in an opinion; Judge GRAFFEO taking no part.

Determined sanction accepted, without costs, and Cathryn M. Doyle removed from the Office of Surrogate of Albany County.