Matter of O'Connor (New York State Commn. on Jud. Conduct) (2018 NY Slip Op 06852)

Matter of O'Connor (New York State Commn. on Jud. Conduct)

2018 NY Slip Op 06852 [32 NY3d 121]

October 16, 2018

Per Curiam

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, December 12, 2018

[*1]

In the Matter of Terrence C. O'Connor, a Judge of the Civil Court of the City of New York, Queens County, Petitioner. New York State Commission on Judicial Conduct, Respondent.

Argued September 6, 2018; decided October 16, 2018

{**32 NY3d at 124} OPINION OF THE COURT

Per Curiam.

In this proceeding, petitioner, a Judge of the Civil Court of the City of New York, Queens County, seeks review of a determination of the New York State Commission on Judicial Conduct, sustaining four charges of misconduct against him and concluding that he should be removed from office (see NY Const, art VI, § 22; Judiciary Law § 44). Upon plenary review of the record, we conclude that the charges are sustained by the evidence, and that the sanction of removal is appropriate.
The Commission served petitioner with a formal written complaint, alleging that he: failed to cooperate with the Commission's investigation (charge I); was discourteous to lawyers in two civil cases by striking testimony after those lawyers said "okay" in response to witness answers, and then failed to comply with the law by dismissing those cases (charge II);{**32 NY3d at 125} made impatient, discourteous, and undignified remarks to lawyers appearing before him in three bench trials (charge III); and sua sponte awarded or threatened to award "counsel fees" on multiple occasions without providing the parties the opportunity to be heard or setting forth the basis for the awards, in violation of established law (charge IV). After petitioner filed an answer denying any wrongdoing, the Commission designated a referee to report findings of fact and conclusions of law. Following a hearing, the referee sustained all of the charges.
The Commission subsequently determined that petitioner violated the Rules Governing Judicial Conduct (22 NYCRR part 100), including section 100.1 (requiring judges to maintain and observe high standards of conduct to preserve the integrity [*2]and independence of the judiciary), section 100.2 (A) (mandating that judges respect and comply with the law and act in a manner promoting public confidence in judicial integrity), section 100.2 (B) (instructing that judges should not allow any type of relationship to affect judicial conduct), section 100.3 (B) (1) (obligating judges to be faithful to, and competent in, the law), and section 100.3 (B) (3) (requiring judges to be patient, dignified and courteous to those with whom the judge deals in an official capacity). The Commission concluded that, "[v]iewed in its entirety, [petitioner's] conduct, seriously exacerbated by his failure to cooperate, demonstrate[ed] his unfitness for judicial office and thus warrant[ed] the sanction of removal." Petitioner sought this Court's review.
Petitioner does not challenge the Commission's finding that he failed to cooperate with its investigation. However, he argues that his behavior underlying the other charges was justified by the circumstances, including the "rough and tumble" nature of landlord-tenant litigation. We disagree. To be sure, judges must insist upon order and decorum in the courtroom (see § 100.3 [B] [2]). Nevertheless, the need to maintain order must be counterbalanced against a judge's obligations to remain patient and to treat those appearing before the court with dignity and courtesy (see § 100.3 [B] [3]). As we have explained, "respect for the judiciary is better fostered by temperate conduct, not by hot-headed reactions" (Matter of Cerbone, 61 NY2d 93, 96 [1984]).
Here, the record is replete with evidence supporting the Commission's determination that, on numerous occasions,{**32 NY3d at 126} petitioner acted impatiently, raised his voice, and made demeaning and insulting remarks, often in open court. In so doing, he violated his obligation to treat those appearing before him with dignity and respect. In addition, as the Commission concluded, petitioner "abuse[d] [his] judicial power" when he twice struck witness testimony and dismissed petitions for insufficient proof as a result of counsel's reflexive use of the word "okay."
We cannot agree that petitioner's transgressions constituted, at most, "harmless" legal errors that should not serve as grounds for misconduct charges. As a threshold matter, a judge must respect and comply with the law, be faithful to it, and competent in it (see §§ 100.2 [A]; 100.3 [B] [1]). In Matter of Jung (State Commn. on Jud. Conduct), this Court reiterated that legal error and misconduct "are not necessarily mutually exclusive," and further explained that "a pattern of fundamental legal error may be 'serious misconduct' " (11 NY3d 365, 373 [2008], quoting Matter of Reeves, 63 NY2d 105, 109 [1984]). As described above, such a pattern was established here. Moreover, petitioner's failure to afford litigants the right to be heard before imposing counsel fees implicates a fundamental right (see Matter of Jung, 11 NY3d at 372-373 ["(t)he right to be heard is fundamental to our system of justice"]; see also § 100.3 [B] [6] [judges must "accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard"]).[FN1] In any event, Matter of Jung did not establish that errors of law—particularly when coupled with circumstances evincing a willful disregard for the proper administration of justice, as in the present matter—can never rise to the level of misconduct so long as no fundamental right is impacted.
Petitioner's reliance on Matter of Richter (42 NY2d [aa] [1977]) is unpersuasive. There, it was alleged that a City Court Judge was intemperate and exceeded his authority by sentencing a criminal defendant in the absence of counsel and without providing notice that the sentencing was to be held earlier than scheduled. However, later that day, the Judge recognized the error, vacated the sentence, and resentenced the defendant{**32 NY3d at 127} in proper fashion. The Court on the Judiciary of New York[FN2] declined to sustain a charge of misconduct, reasoning that the "error was one of sheer [*3]inadvertence" and "was harmless" (id. at [cc]). In contrast, petitioner's failure to observe and follow the law resulted in substantial and unjustifiable adverse consequences for the parties that went uncorrected—namely the dismissal of their petitions and the imposition of fee awards. On this record, we conclude that the charges against petitioner are sustained by the evidence.
Turning to petitioner's challenge to the sanction of removal, this Court may "accept or reject the sanction determined by the commission, impose a different sanction, or impose no sanction at all" (Matter of Cunningham, 57 NY2d 270, 274 [1982]; see NY Const, art VI, § 22 [d]; Judiciary Law § 44 [7]; see also Matter of Marshall, 8 NY3d 741, 743 [2007]). We have explained that "[t]he purpose of judicial disciplinary proceedings is not punishment but the imposition of sanctions where necessary to safeguard the Bench from unfit incumbents" (Matter of Duckman, 92 NY2d 141, 152 [1998] [internal quotation marks omitted]). "The actual levels of discipline to be imposed by the Court for judicial misconduct are, in the end, institutional and collective judgment calls," which "rest on [the Court's] assessment of the individual facts of each case, as measured against the Code and Rules of Judicial Conduct and the prior precedents of this Court" (id. [internal quotation marks omitted]; see Matter of Simon [State Commn. on Jud. Conduct], 28 NY3d 35, 37 [2016]).
This Court has long emphasized that "[r]emoval is an extreme sanction and should be imposed only in the event of truly egregious circumstances" (Matter of Cunningham, 57 NY2d at 275). The sanction of removal "should not be ordered for conduct that amounts simply to poor judgment, or even extremely poor judgment" (id.). However, "the truly egregious standard is measured with due regard to the fact that Judges must be held to a higher standard of conduct than the public at large" (Matter of Going, 97 NY2d at 127 [internal quotation marks omitted]; see Matter of Ayres [New York State Commn. on Jud. Conduct], 30 NY3d 59, 64 [2017]). Thus,
"the severe sanction of removal is warranted where a jurist has exhibited a pattern of injudicious{**32 NY3d at 128} behavior . . . which cannot be viewed as acceptable conduct by one holding judicial office . . . or an abuse of the power of his office in a manner that . . . has irredeemably damaged public confidence in the integrity of [the judge's] court" (Matter of Jung, 11 NY3d at 374 [internal quotation marks omitted]).
"Whether a judge's behavior crosses the line of what constitutes 'truly egregious' conduct is a fact-specific inquiry because '[j]udicial misconduct cases are, by their very nature, sui generis' " (Matter of Ayres, 30 NY3d at 64, quoting Matter of Blackburne [State Commn. on Jud. Conduct], 7 NY3d 213, 219-220 [2006]).
Here, petitioner's comments in open court were intemperate and inconsistent with appropriate judicial demeanor. In addition, his sustained pattern of inappropriate behavior evinced a lack of understanding of his role as a judge—most notably by disregarding the law and impinging on the fundamental right to be heard—thus eroding the public's trust and confidence in the integrity of the judiciary. Critically, petitioner's "misconduct was significantly compounded by [his] persistent failure to cooperate with the Commission investigation" (Matter of Mason [State Commn. on Jud. Conduct], 100 NY2d 56, 60 [2003]; see Matter of Cooley, 53 NY2d 64, 66 [1981]).[FN3] In that regard, [*4]petitioner maintains that his underlying conduct, standing alone, would ordinarily result in no more than a censure, and that his failure to cooperate fully with the Commission's investigation should not elevate the sanction to removal. We reject this argument. This Court will not overlook the entirety of a judge's behavior and the extent to which it "qualif[ies] in {**32 NY3d at 129}the aggregate to the level and quality of egregiousness that merit[s] the ultimate discipline of removal" (Matter of Roberts, 91 NY2d 93, 95 [1997] [emphasis added]). The power of the Commission to investigate allegations of misconduct lodged against judges is derived from the State Constitution and statute (see NY Const, art VI, § 22; Judiciary Law art 2-A). Indeed, it is well settled that, when a judge fails to cooperate with an investigation of the Commission—which is vested with the statutory authority to "require the appearance of the judge involved before it" (Judiciary Law § 44 [3]; see 22 NYCRR 7000.3 [e])—that dereliction can be a significant aggravating factor in determining the appropriate sanction for misconduct (see Matter of Mason, 100 NY2d at 60; see Matter of Cooley, 53 NY2d at 66).
The Rules provide that a judge "should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved" (§ 100.1). Judges are also charged with promoting public confidence in the integrity of the judiciary through their own respect for the law (§ 100.2 [A]). Public confidence in the integrity of the judiciary has long been recognized as essential to its vitality as well as our overall system of government (see generally United States v Lee, 106 US 196, 223 [1882]). If the public trust in the judiciary is to be maintained, as it must, those who don the robe and assume the role of arbiter of what is fair and just must do so with an acute appreciation both of their judicial obligations and of the Commission's constitutional and statutory duties to investigate allegations of misconduct (see NY Const, art VI, § 22; Judiciary Law art 2-A). In short, willingness to cooperate with the Commission's investigations and proceedings is not only required—it is essential. Here, in addition to a sustained pattern of inappropriate behavior in the courtroom, petitioner repeatedly failed to appear before the Commission, and engaged in other conduct demonstrating his unwillingness to cooperate fully with the investigation. Under all of the relevant circumstances, and considering petitioner's conduct as a whole, we conclude that the determined sanction of removal is warranted. Petitioner's remaining contentions lack merit.
Accordingly, the determined sanction should be accepted, without costs, and Terrence C. O'Connor removed from the office of Judge of the Civil Court of the City of New York, Queens County.{**32 NY3d at 130}
Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur in per curiam opinion.
Determined sanction accepted, without costs, and Terrence C. O'Connor removed from the office of Judge of the Civil Court of the City of New York, Queens County.

Footnotes

Footnote 1:Upon our independent review of the record, and according due deference to the credibility determinations of the Commission (see Matter of Going, 97 NY2d 121, 124 [2001]), we conclude that the record amply supports the Commission's determination that petitioner did, in fact, award counsel fees without providing the party ordered to pay those fees an opportunity to be heard, which practice contravened the applicable rules governing the award of costs and sanctions (see 22 NYCRR 130-1.1 [a], [d]).

Footnote 2:The Court on the Judiciary was an ad hoc judicial disciplinary body that was abolished, pending resolution of those cases which had already been commenced before it, when the present Commission was created (see NY Const, art VI, § 22 [j]).

Footnote 3:Petitioner's "prior censure further supports the finding that [his] future retention of office is inconsistent with the fair and proper administration of justice" (Matter of Kuehnel v State Commn. on Jud. Conduct, 49 NY2d 465, 470 [1980]). Notably, the misconduct underlying this proceeding began within one year of the prior censure. While petitioner discounts the significance of that censure on the basis that it involved dissimilar conduct, this Court has explained that "[t]he mere existence of a prior censure would be noteworthy regardless of whether it was related to the instant misconduct" and "a heightened awareness of and sensitivity to any and all ethical obligations would be expected of any judge after receiving a public censure" (Matter of Doyle [State Commn. on Jud. Conduct], 23 NY3d 656, 662 [2014]). "Petitioner's failure to exercise that vigilance within just a year of h[is] prior discipline is persuasive evidence that [ ]he lacks the judgment necessary to h[is] position" (id.).