# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 61
In the Matter of the Hon. Richard
H. Miller, II, a Judge of Family
Court, Broome County.

Richard H. Miller, II,
     Petitioner;
New York State Commission on Judicial
Conduct,
     Respondent.

Paul DerOhannesian, II, for petitioner.
Robert H. Tembeckjian, for respondent.

PER CURIAM:

Petitioner, a Judge of the Family Court, Broome County, seeks review of a

determination by the State Commission on Judicial Conduct that he committed certain acts

of misconduct and should be removed from office (*see* NY Const, art VI, § 22; Judiciary

Law § 44). Upon our independent review of the record, we sustain the Commission's

- 1 -

findings and conclude that petitioner's broad pattern of misconduct—when considered in the context of his "inability to recognize the seriousness of [his] misconduct and [his] failure to heed a prior warning[, which are] significant aggravating factors" (*Matter of Ayers [New York State Commn. on Jud. Conduct]*, 30 NY3d 59, 64 [2017])—warrants removal.

I.

Petitioner took office as a Family Court Judge in 2015, after previously serving as a part-time judge of town or city courts since 1994, along with maintaining a private practice. In July 2018, the Commission served petitioner with a formal written complaint, containing four charges; charges I, II, and IV were ultimately sustained. Charge I alleged that petitioner engaged in a pattern of inappropriate behavior, including making sexualized comments, toward certain staff members of the Broome County Family Court. Charge II alleged that petitioner both lent the prestige of his judicial office to advance his private interests and failed to conduct his extra-judicial activities so as to minimize the risk of conflict with his judicial obligations when he had his court secretary perform services unrelated to her official duties. Charge III, which was not sustained, alleged that, while a full-time judge, petitioner improperly engaged in the practice of law. Lastly, charge IV alleged that petitioner failed to timely and accurately disclose income from his extra-judicial activities, as required, to the Internal Revenue Service, the New York State Department of Taxation and Finance, the Ethics Commission for the Unified Court System, and the Clerk of the Broome County Family Court.

The evidence before the Commission with respect to charge I included the testimony of the former chief clerk of the Broome County Family Court regarding petitioner's inappropriate behavior toward court staff, including herself. She stated that, during May and June 2017, petitioner told her that, if he "knew [she] could also cook, [he] would have gone for [her];" that "[i]t's nice to know [he] still ha[s] that effect on [her]" when she apologized for having a hot flash; and that she "look[ed] really hot" in a particular outfit and should always wear it. A court assistant further testified that, while working with petitioner in the courtroom one afternoon in February 2017, petitioner stood up and "yelled" at her in a "demeaning" and "belligerent manner" from a distance of three or four feet away, telling her that she was not doing her job properly, was too slow, and needed to move faster. After learning that the court assistant complained about his behavior, petitioner filed a written complaint, criticizing her job performance. The chief clerk found petitioner's complaints to be mostly "unfounded" and retaliatory.

The facts with respect to charge II were largely conceded by petitioner. In November 2015, a former client of petitioner sent unsigned checks in an attempted payment for legal fees. Petitioner testified that, when he stated that the checks needed to be returned to his client for a signature, his judicial secretary offered to type a letter. She then wrote the letter as if it was authored by petitioner's former legal assistant from his law firm, requesting that the checks be sent back signed. Petitioner brought the letter back to his former law office and it was mailed from that location. The following month, petitioner received signed checks from his client, totaling approximately $11,000.

Those checks also relate to charge IV. Including the $11,000 payment, petitioner received a total of approximately $27,000 in legal fees in late 2015 for work performed prior to becoming a full-time judge. In addition, from 2015 to 2017, petitioner received $38,600 in rental payments on two properties in which he had an ownership interest. Petitioner did not initially report the extra-judicial income on his 2015 and 2016 federal and state tax returns. In July 2017, petitioner learned that a complaint had been made against him, he was unable to access his chambers, and the Commission had taken possession of boxes containing his tax records that were stored in his chambers. In addition, the Inspector General for the Unified Court System questioned him about his receipt of checks in connection with one of the cases for which he received the income in late 2015. In August 2017, petitioner filed amended federal and state tax returns for 2015 and 2016 reflecting the legal fees and rental income that was not previously reported, resulting in an increase in income taxes owed. Petitioner and his accountant testified that they worked on amending his tax returns as early as April or May 2017, but no amendments were filed until August 2017.

Similarly, petitioner failed to disclose on his 2015 Financial Disclosure Form (FDF) filed with the Ethics Commission of the Unified Court System the approximately $27,000 in legal fees that he received. He acknowledged this failure, but testified that he had believed that income was received in 2016, rather than 2015, and was reportable on his 2016 FDF. However, petitioner also failed to report the income when he filed his 2016 FDF in May 2017; instead, he amended his 2015 FDF in November 2017 to include the income. Petitioner also testified that he never reported any rental income on his 2015 and

2016 FDFs because his rental properties—when considered as a whole—operated at a loss when the rents were reduced by expenses. However, his amended tax returns indicated that one property had a net income in excess of $1,000 for both years. Finally, despite receiving an April 2016 reminder of his obligation under section 100.4 (H) (2) of the Rules Governing Judicial Conduct (22 NYCRR) to report to the clerk of his court any extra-judicial income, petitioner stated that he was not aware of the requirement to file a separate form, and believed his obligations were satisfied by the Ethics Commission FDF. It was not until January 2019, after the first five days of the hearing before the Referee in this matter, that petitioner reported to the chief clerk of the Broome County Family Court his extra-judicial income for the years 2015 through 2017.

The Commission unanimously determined that petitioner's actions violated sections 100.1, 100.2 (A), 100.2 (C), 100.3 (B) (3), 100.3 (C) (1), and 100.4 (H) (2) and 100.4 (I) of the Rules. A majority of the Commission members concluded that removal from office was the appropriate sanction in light of petitioner's three separate categories of misconduct, his prior censure by the Commission, his failure to take responsibility for his actions, and the message that another censure would send to the public. Two Commission members dissented in part on the ground that censure, rather than removal, was an adequate sanction.

II.

Petitioner primarily challenges the sanction of removal, but he also requests that this Court set aside any findings made in this matter by the Commission that differ from those made by the Referee. With respect to the Commission's factual findings, it is well settled that "[n]either the Commission nor this Court is bound to accept the Referee's findings"

(*Matter of Marshall*, 8 NY3d 741, 743 [2007]).  The record does not support petitioner's argument that the Commission ignored or rejected any of the Referee's findings that were based on an assessment of witness credibility.  Upon our review of the record, we conclude that the charges were properly sustained.

Turning to the appropriate sanction, "'[r]emoval is an extreme sanction and should be imposed only in the event of truly egregious circumstances'" (*Matter of O'Connor [New York State Commn. on Jud. Conduct]*, 32 NY3d 121, 127 [2018], quoting *Matter of Cunningham*, 57 NY2d 270, 275 [1982]).  However, "[a]lthough judicial disciplinary proceedings are not punishment . . ., the severe sanction of removal is warranted where a jurist has exhibited a 'pattern of injudicious behavior . . . which cannot be viewed as acceptable conduct by one holding judicial office'" (*Matter of Jung [State Commn. on Jud. Conduct]*, 11 NY3d 365, 374 [2008], quoting *Matter of VonderHeide [State Commn. on Jud. Conduct]*, 72 NY2d 658, 660 [1988]).  "The actual levels of discipline to be imposed by the Court for judicial misconduct are, in the end, institutional and collective judgment calls" that "rest on our assessment of the individual facts of each case, as measured against the Code and Rules of Judicial Conduct and the prior precedents of this Court" (*Matter of Duckman*, 92 NY2d 141, 152 [1998] [internal quotation marks and citations omitted]).

Petitioner's challenge to the sanction of removal on the ground that his prior history with the Commission should not have been considered lacks merit.  A judge's behavior must be considered "*in the aggregate*" (*O'Connor*, 32 NY3d at 128-129 [internal quotation marks and citation omitted]), and a prior censure may "further support[] [a] finding that [the petitioner's] future retention of office is inconsistent with the fair and proper

administration of justice," even if "it involved dissimilar conduct" (*id.* at 128 n 3). This Court has explained that "[t]he mere existence of a prior censure would be noteworthy regardless of whether it was related to the instant misconduct" because "a heightened awareness of and sensitivity to any and all ethical obligations would be expected of any judge after receiving a public censure" (*Matter of Doyle [State Commn. on Jud. Conduct]*, 23 NY3d 656, 662 [2014]).

Regarding the current charges, petitioner's conduct toward court employees as proven in connection with charge I violated sections 100.10 and 100.3 (B) (3) of the Rules (*see O'Connor*, 32 NY3d at 125-126 [2018]; *Duckman*, 92 NY2d at 152). To be sure, these proven instances of injudicious behavior were not "numerous;" in fact, the court assistant testified that she was "flabbergasted" by petitioner's behavior because she had never seen him act that way before. Nevertheless, it is "the *nature* of the proven wrongdoing as well as the numbers that determine the appropriate sanction" (*Duckman*, 92 NY2d at 154 [emphasis added]), and the misconduct at issue was compounded by petitioner's retaliation against the court assistant when she complained of his conduct. Moreover, while petitioner continues to argue that it is a matter of mitigation that his unprofessional comments to the chief clerk were an attempt at humor, this Court has long recognized that such comments, "even if made in jest, are, without question, . . . entirely inappropriate" (*see Matter of Collazo [State Commn. on Jud. Conduct]*, 91 NY2d 251, 254 [1998]). A judge's refusal "to acknowledge the impropriety of his behavior" is "particularly relevant to the question of appropriate sanction" (*Duckman*, 92 NY2d at 154).

With regard to charge II, petitioner concedes that having his secretary draft a letter seeking payment for work performed in his former private practice was inappropriate—indeed, it violated section 100.2 (C) of the Rules—but argues that "one lapse in judgment" does not warrant removal.  That argument is unavailing because the admitted impropriety underlying charge II is not the only lapse in judgment evident on the record before us; rather, it is part of a larger pattern of misconduct, reflecting petitioner's inattention to his ethical responsibilities.

Finally, the conduct underlying charge IV, which violated sections 100.2 (A), 100.3 (C) (1), 100.4 (H) (2) and 100.4 (I) of the Rules, is particularly troubling to this Court. Although "careless omissions from a financial disclosure statement are not the type of 'truly egregious' conduct that warrants removal from office" (*Matter of Alessandro [State Commn. on Jud. Conduct]*, 13 NY3d 238, 249 [2009]), petitioner's years-long delay in filing required local financial disclosure forms, together with his failure to amend both his tax returns and 2015 FDF until he was under investigation, impedes the purpose of these disclosure forms, which is, in part, to "enable[] lawyers and litigants to determine whether to request a judge's recusal" (*id.*).  Moreover, the timing of petitioner's amendment of his tax returns and FDF—after he had received actual notice that he was being investigated for failure to report income related to his former legal practice—as well as his failure to amend his 2015 and 2016 FDFs to reflect income received from his rental properties despite amending his tax returns in that regard, goes beyond mere carelessness and points to a pattern of disregard for his ethical obligations.  Similarly, petitioner's explanation that he did not report the income from his law practice in 2015 because he believed it was

reportable in 2016, combined with the failure to report the income in 2016, is an inadequate explanation, and suggests deliberate deceptive conduct (*see Matter of Moynihan*, 80 NY2d 322, 325 [1992]).

Considering petitioner's misconduct in the aggregate, along with his prior disciplinary history, petitioner "exhibited a pattern of injudicious behavior . . . which cannot be viewed as acceptable conduct by one holding judicial office" (*Jung*, 11 NY3d at 374 [internal quotation marks and citation omitted]).  Accordingly, the determined sanction should be accepted, without costs, and Richard H. Miller, II removed from the office of Judge of the Family Court, Broome County.

Determined sanction accepted, without costs, and Richard H. Miller, II removed from the office of Judge of Family Court, Broome County. Opinion Per Curiam. Judges Stein, Fahey, Garcia, Wilson and Feinman concur. Chief Judge DiFiore and Judge Rivera took no part.

Decided October 15, 2020