Matter of Zyion B. (Fredisha B.) (2024 NY Slip Op 00550)

Matter of Zyion B. (Fredisha B.)

2024 NY Slip Op 00550

Decided on February 2, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 2, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, BANNISTER, OGDEN, AND DELCONTE, JJ.

960 CAF 22-01749

[*1]IN THE MATTER OF ZYION B. ONONDAGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, PETITIONER-RESPONDENT; FREDISHA B., RESPONDENT-APPELLANT.

LAW OFFICE OF VERONICA REED, SCHENECTADY (VERONICA REED OF COUNSEL), FOR RESPONDENT-APPELLANT.
ROBERT A. DURR, COUNTY ATTORNEY, SYRACUSE (JOSEPH M. MILITI OF COUNSEL), FOR PETITIONER-RESPONDENT.
H. KATHRYN KILMARTIN, SYRACUSE, ATTORNEY FOR THE CHILD. 

 Appeal from an order of the Family Court, Onondaga County (Julie A. Cerio, J.), entered September 21, 2022, in a proceeding pursuant to Family Court Act article 10. The order, inter alia, placed the subject child with petitioner. 
It is hereby ORDERED that said appeal is unanimously dismissed without costs.
Memorandum: In this Family Court Act article 10 proceeding, Family Court entered an order in July 2020 that, among other things, temporarily removed the subject child from respondent mother's care based on allegations made by petitioner, Onondaga County Department of Children and Family Services (DCFS), that the mother had, inter alia, failed to maintain a safe and sanitary home. The subject child was then placed with a relative, but was later returned to the mother's care after the mother moved into a new apartment. Subsequently, the court entered an order of fact-finding and disposition, premised on the mother's admission of neglect, pursuant to which the subject child was to remain in the mother's custody and the mother was to be placed under DCFS supervision for a period of 12 months between April 2022 and April 2023. However, in August 2022, the court, on its own motion and over the objection of DCFS, held a fact-finding hearing to determine whether the subject child should be removed from the mother's care. At the close of the hearing, the court issued a temporary removal order determining, inter alia, that it was in the best interests of the child to be placed with DCFS until the completion of the next permanency hearing in February 2023. The mother now appeals from that order.
We conclude that the appeal must be dismissed as moot "inasmuch as it is undisputed that superseding permanency orders have since been entered, in which [the mother] stipulated that it would be in the best interests of the child[ ] to continue [her] placement with" DCFS (Matter of Nyjeem D. [John D.], 174 AD3d 1424, 1425 [4th Dept 2019], lv denied 34 NY3d 911 [2020]; see Matter of Victoria B. [Jonathan M.], 164 AD3d 578, 580 [2d Dept 2018]; cf. Matter of Kenneth QQ. [Jodi QQ.], 77 AD3d 1223, 1224 [3d Dept 2010]). Moreover, during the pendency of this appeal, an order of release was issued returning the subject child to the mother with a 12-month order of supervision, which provides an additional basis for dismissing the appeal as moot (see generally Matter of Faith B. [Rochelle C.], 158 AD3d 1282, 1282-1283 [4th Dept 2018], lv denied 31 NY3d 910 [2018]; Matter of Gaige F. [Carolyn F.], 144 AD3d 1575, 1576 [4th Dept 2016]).
Nevertheless, under the unusual circumstances of this case, we are compelled to express our deep concern with the Family Court Judge's abandonment of her neutral judicial role during the sua sponte removal hearing. Family Court Act § 1061 provides, as relevant here, that the [*2]court may, "[f]or good cause shown and after due notice, . . . on its own motion . . . set aside, modify or vacate any order issued in the course of a proceeding under this article" (see generally Matter of Mario D. [Marina L.], 147 AD3d 828, 828 [2d Dept 2017]; Matter of Tina XX., 73 AD2d 1013, 1014 [3d Dept 1980]). That broad grant of authority is necessary inasmuch as "[i]t is the Family Court and not [DCFS] which acts as parens patriae to do what is in the best interests of the child[ ]" (Matter of Shinice H., 194 AD2d 444, 444 [1st Dept 1993]), and thus the court is "empowered to guard the welfare of the child" (Matter of Dale P., 84 NY2d 72, 80 [1994]). Here, however, we conclude that the Judge failed to properly balance her role in parens patriae with her statutory obligation to ensure that the parties received due process at the hearing, specifically with respect to the due process requirement that the hearing be conducted before an impartial jurist (see Family Ct Act § 1011; People v Novak, 30 NY3d 222, 225 [2017]; Matter of Marie B., 62 NY2d 352, 358 [1984]).
At the hearing, the Judge "took on the function and appearance of an advocate" by choosing which witnesses to call and "extensively participating in both the direct and cross-examination of . . . witnesses" (Matter of Jacqulin M., 83 AD3d 844, 845 [2d Dept 2011]), with a clear intention of strengthening the case for removal. For example, she asked a DCFS caseworker whether the mother was "hostile, aggressive, violent or out of control," and repeated questions to that caseworker using the same or similar phrasing at least 10 times. When the mother's counsel objected to the Judge's leading questions of another witness regarding incidents outside the relevant time period, the Judge overruled the objection, stating that "there's no one else to run the hearing except for me." She also introduced and admitted several written documents during the mother's testimony over the objection of the mother's counsel, and despite the mother's statement that she could not read and was not familiar with the documents. In short, the Judge "essentially 'assumed the parties' traditional role of deciding what evidence to present' " while simultaneously acting as the factfinder (id., quoting People v Arnold, 98 NY2d 63, 68 [2002]) and thereby "transgressed the bounds of adjudication and arrogated to [herself] the function of advocate, thus abandoning the impartiality required of [her]" (Matter of Carroll v Gammerman, 193 AD2d 202, 206 [1st Dept 1993]; see Matter of Kyle FF., 85 AD3d 1463, 1463-1464 [3d Dept 2011]).
This " 'clash in judicial roles,' " in which the Judge acted both as an advocate and as the trier of fact, "[a]t the very least . . . created the appearance of impropriety" (Matter of Stampfler v Snow, 290 AD2d 595, 596 [3d Dept 2002]; see Matter of Baby Girl Z. [Yaroslava Z.], 140 AD3d 893, 894-895 [2d Dept 2016]), particularly when the Judge aggressively cross-examined the mother regarding topics that were not relevant to the issue of the child's removal and seemed designed to embarrass and upset the mother (see Matter of Siegell v Iqbal, 181 AD3d 951, 952 [2d Dept 2020]). One such area of cross-examination concerned the fact that the mother had become pregnant several months before the hearing, but had been forced to terminate the pregnancy when it was determined to be ectopic. The Judge repeatedly questioned the mother regarding how many times the mother had engaged in sexual intercourse with the father of the terminated fetus, even though such information does not appear to have been relevant to the issue of the subject child's placement inasmuch as, inter alia, there was no indication that the man was ever in the subject child's presence. The Judge also asked the mother baseless questions about whether that man was a pedophile.
We reiterate that "it is the function of the judge to protect the record at trial, not to make it[, and] the line is crossed when," as here, "the judge takes on either the function or appearance of an advocate at trial" (Arnold, 98 NY2d at 67). We are thus compelled here to remind the Judge that even difficult or obstreperous litigants are entitled to "patient, dignified and courteous" treatment from the court, and that judges must perform their duties "without bias or prejudice" (22 NYCRR 100.3 [B] [3], [4]; see generally Matter of O'Connor [New York State Commn. on Jud. Conduct], 32 NY3d 121, 126 [2018]). Given the "lack of impartiality repeatedly exhibited by the . . . Judge in this case" (Matter of Amanda G., 64 AD3d 595, 596 [2d Dept 2009]), we strongly recommend that she consider whether recusal is appropriate for future proceedings involving the mother (see Stampfler, 290 AD2d at 596; see generally Matter of State of New York v Richard F., 180 AD3d 1339, 1340-1341 [4th Dept 2020]).
Entered: February 2, 2024
Ann Dillon Flynn
Clerk of the Court